686 S.E.2d 41

**In re EMILY G.**

**No. 34752.**

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 7, 2009.

Decided Oct. 29, 2009.

Michele Rusen, Rusen & Auvil, Parkersburg, WV, for the Petitioners, Donna and John M.

Carl Lee B., Parkersburg, WV, Respondent, Pro Se.

Michael D. Farnsworth, Jr., Parkersburg, WV, Guardian ad Litem for the Minor Child, Emily G.

PER CURIAM:

The petitioners herein, Donna and John M.[1] (hereinafter "Donna and John"), appeal from an order entered September 23, 2008, by the Circuit Court of Wood County. By that order, the circuit court denied the petition filed by Donna and John alleging that their granddaughter, the minor child at issue herein, Emily G. (hereinafter "Emily"), is "an abused and/or neglected child."[2] On appeal to this Court, Donna and John contend that the circuit court erred by refusing to adjudicate Emily as an abused and/or neglected child and that such ruling precludes the es-

---

1. Due to the sensitive nature of the facts involved in this case, we will adhere to our practice in similar cases and refer to the parties by their last initials, rather than using their full names. *See, e.g., In re Cesar L.*, 221 W.Va. 249, 252 n. 1, 654 S.E.2d 373, 376 n. 1 (2007).

2. *See* note 9, *infra.*

tablishment of Emily's permanent placement. Upon a review of the parties' arguments, the record submitted for appellate consideration, and the pertinent authorities, we vacate the decision of the Wood County Circuit Court dismissing the abuse and/or neglect petition filed by Donna and John and reinstate said petition. Furthermore, we remand this case to permit the circuit court to hold a hearing on Donna and John's petition alleging that their granddaughter, Emily, is an abused and/or neglected child. Finally, we direct the circuit court to grant intervenor status to the Wood County Department of Health and Human Resources (hereinafter "DHHR") so that it may participate in the abuse and neglect proceedings on remand and to appoint counsel to represent Emily and her biological parents, Sylvia and Carl, during the remand proceedings.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The facts underlying the instant proceeding are largely undisputed by the parties. Emily, the subject child of the case *sub judice*, was born on August 14, 2006. Sylvia, who is the daughter of Donna and the stepdaughter of John, is Emily's mother, and Carl is Emily's father.[3] At the time of Emily's birth, Sylvia was seventeen years old; Sylvia was residing with Donna and John; and she and Carl were not married to each other. When Emily was approximately two months old, Sylvia assigned temporary guardianship of Emily to Donna and John on October 25, 2006. Thereafter, Sylvia and Carl, by peti-

tion dated November 14, 2006, jointly attempted to regain Emily's custody.

During the next year and one-half, Sylvia and Carl continued their tumultuous relationship.[4] Sylvia and Carl were briefly married to each other,[5] and numerous domestic violence petitions were filed by each of them against the other before, during, and after their marriage.[6] The allegations of domestic violence range from physical attacks involving hitting, kicking, cutting, and choking, to non-physical attacks involving death threats, telephone harassment, and being held against the petitioner's will. These petitions alternately culminated in six-month protective orders or were dismissed at the petitioner's request.

Throughout this time, Emily's guardianship proceedings continued through the Wood County Family Court. On January 29, 2007, the family court upheld the temporary guardianship agreement by which Sylvia had assigned temporary custody of Emily to Donna and John and awarded Emily's temporary custody to Donna and John in accordance therewith. Carl continued to pursue custodial rights to Emily, and filed petitions for modification of Emily's custody on February 2, 2007, which petition the family court denied. Thereafter, on March 5, 2007, Carl filed another petition for modification of Emily's custody; additional proceedings were had on this petition in the family court. Following a hearing held on October 2, 2007, the family court granted Carl[7] supervised visitation with Emily for one hour every other week, which visitations were later increased to one hour every week following the family court's February 4, 2008, hearing.

---

**3.** On August 27, 2007, following DNA testing, Carl was recognized as Emily's father. However, it is unclear from the record whether Carl voluntarily signed an affidavit of paternity or whether Carl was declared to be Emily's father by court order.

**4.** Before Emily was born, Carl had filed a domestic violence petition against Sylvia, which petition Carl later requested be dismissed.

**5.** Sylvia and Carl were married on July 10, 2007, and were divorced by order of the Wood County Family Court following its hearing of October 2, 2007.

**6.** During the oral arguments in this case, counsel for Donna and John represented that a total of ten domestic violence petitions have been filed regarding Sylvia and Carl's violence towards one another, including the most recent petition filed in January 2009. Some of these petitions culminated in criminal sanctions for violations of the resultant protective orders.

**7.** It is not apparent from the record whether the family court also granted Sylvia supervised visitation with Emily.

Subsequently, on July 8, 2008, the family court entered a final order awarding Emily's "sole care, custody and control" to Donna and John, as the child's "primary residential custodians ... until further Order of the Court." The court additionally awarded supervised visitation to Sylvia and Carl for one hour every week, and permitted Carl's parents, Emily's paternal grandparents, to participate in these visits one time per month. Finally, the court adopted the recommendations of Emily's Guardian ad Litem (hereinafter "Guardian"), who suggested the family court impose various requirements on Sylvia and Carl with a view towards remedying their tendencies to commit domestic violence and providing a safe, nurturing, and violence-free environment for Emily.[8]

Following the entry of the family court's order, Donna and John filed the instant abuse and/or neglect petition[9] in the Circuit Court of Wood County on September 8, 2008,[10] ostensibly in accordance with the Guardian ad Litem's recommendation that such a petition be filed if Sylvia and Carl cannot maintain an amicable, violence-free relationship with one another.[11] In their petition, Donna and John alleged Emily to be an abused and/or neglected child as a result of the ongoing domestic violence between her mother, Sylvia, and her father, Carl; sought to terminate the parental rights of Emily's parents, Sylvia and Carl; and indicated their willingness to provide permanence and stability to Emily by adopting her. By order entered September 23, 2008, the circuit court denied Donna and John's petition finding that it "does not allege sufficient facts to come within the statutory definition of abuse and neglect." The circuit court explained further that "there are no allegations that any of the acts of domestic violence occurred in the presence of the child." From this adverse ruling, Donna and John appeal to this Court.

## II.

## STANDARD OF REVIEW

On appeal to this Court, Donna and John seek review of the circuit court's order dismissing their abuse and/or neglect petition. In Syllabus point 1 of *In the Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996), we explained the method by

---

8. In his May 5, 2008, report, Emily's Guardian ad Litem recommended that,

> [t]o protect the parents [Sylvia and Carl] and the child [Emily], the following limiting factors should be imposed by the Court: 1) both parents should have only supervised visits with Emily until further order of the Court; 2) these visits should be supervised by Kid's First (at different times for each parent) until each parent has completed the programs of intervention recommended herein (upon a parent's completion of said programs that parent's visitation may be monitored by another responsible adult); 3) neither parent shall reside in or visit the same home where Emily resides when Emily is present until the parent has completed the programs of intervention recommended herein; 4) each parent shall actively participate in and complete the Batterer's Intervention Program at the Day Report Center; 5) each parent shall actively participate in and complete a program designed for victim's [sic] of domestic violence; 6) each parent shall actively participate in and complete parenting classes; 7) each parent shall demonstrate that [he/she] [is] able to maintain a home environment that is stable, safe, nurturing, free of domestic violence, and otherwise appropriate for a child of such tender years; 8) each parent shall abide completely with the protective violence orders in effect; 9) neither parent should

seek to have said orders terminated prematurely; 10) the parents should not have any form of contact or communication with each other; and 11) Abuse and Neglect Proceedings should be commenced as soon as it becomes evident that either party is failing to comply fully with the conditions set forth herein so that parental rights can be terminated and visitation ended.

9. Donna and John filed their petition alleging that Emily is an abused and/or neglected child pursuant to W. Va.Code § 49-6-1 (2005) (Supp. 2009). For further treatment of this statute, see Section III, *infra*.

10. While it does not appear from the record in this case that Donna and John served their abuse and/or neglect petition upon the Wood County Department of Health and Human Resources (DHHR) or that they otherwise notified the DHHR of the petition's filing despite the statutory requirement to do so, their counsel stated during the oral arguments in this case that they had, in fact, served the Department with their petition. *See* W. Va.Code § 49-6-1(b) (requiring that "[n]otice [of the filing of an abuse and neglect petition] shall ... be given to the department").

11. *See* note 8, *supra*.

which we review circuit court rulings in abuse and neglect proceedings:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

*Accord In re Elizabeth Jo H.*, 192 W.Va. 656, 659, 453 S.E.2d 639, 642 (1994) (per curiam) (commenting, in abuse and neglect case, that "[a]ppellate oversight is ... deferential" and applying "clearly erroneous standard" of review). We will consider the parties' arguments in light of this standard.

### III.

### DISCUSSION

During the proceedings underlying the instant appeal, the circuit court dismissed the petition filed by Donna and John alleging that their granddaughter, Emily, was an abused and/or neglected child. The circuit court rendered this ruling, without holding a hearing on said petition, based upon its belief that "the Petition does not allege sufficient facts to come within the statutory definition of abuse and neglect. For example, there are no allegations that any of the acts of domestic violence occurred in the presence of the child."

On appeal to this Court, Donna and John complain that the circuit court erred by dismissing their petition and refusing to consider the evidence they presented in support of their allegations that Emily is an abused and/or neglected child. In this regard, Donna and John argue that the ongoing history of domestic violence between Sylvia and Carl supports a finding that Emily is an abused and/or neglected child. They contend that since the family court's final order, Sylvia and Carl have continued their tumultuous and violent relationship and that, other than attending supervised visitation with Emily, they have not satisfied any of the other conditions recommended by the Guardian ad Litem and adopted by the family court. In support of their allegations of abuse and/or neglect, Donna and John rely upon similar cases decided by this Court in which a finding of abuse and/or neglect was premised not upon direct violence towards the subject child but instead upon domestic violence in the home in which the child lived. *See In re Frances J.A.S.*, 213 W.Va. 636, 584 S.E.2d 492 (2003) (per curiam); *In re Brandon Lee B.*, 211 W.Va. 587, 567 S.E.2d 597 (2001) (per curiam). Donna and John further express concern that Emily's best interests require that she have stability and permanency in her life and that until the parental rights of Sylvia and Carl have been terminated, no such permanency can be achieved.

The Guardian ad Litem responds that although he was Emily's Guardian in the underlying custody proceedings, he was not a party to Donna and John's petition alleging Emily to be an abused and/or neglected child [12] and does not have any information from which to conclude that Emily has been abused and/or neglected by Sylvia and Carl's failure to comply with his recommendations set forth in the family court's final order. While the Guardian has reservations about the ability of Emily's parents to care for her given their mental capacity, young age, and history of violence towards each other, he nevertheless requests that Emily be permitted to maintain the marginal relationship she

12. While appearing before this Court during the oral arguments in this case, the Guardian ad Litem specifically stated that the circuit court had not appointed him to represent Emily in the instant abuse and neglect proceeding insofar as the court had dismissed said proceeding before a hearing had been held on the underlying abuse and neglect petition.

currently has with her parents until such time as visitation with them becomes harmful to her. Moreover, the Guardian remains hopeful that Sylvia and Carl will be able to establish a more meaningful relationship with Emily in the future and that, for this reason, their legal rights to Emily should remain in place.

Finally, Carl responds to Donna and John's arguments by stating that he has complied with the Guardian's recommendations by attending supervised visitation with Emily and completing a parent education class. As he did repeatedly during the previous guardianship proceedings, Carl reiterates in the case *sub judice* his desire to be awarded custody of Emily and represents that he is currently in a stable relationship and lives in a peaceful household free from domestic violence.

Having reviewed the parties' arguments and the governing law, we agree with Donna and John's assertions that the circuit court committed error in this case. However, we reach this conclusion not upon the credibility or substantiality of the allegations of abuse and/or neglect proffered by Donna and John, but rather based upon the statutory law that governs abuse and neglect petitions. Pursuant to this authority, the circuit court erred by dismissing Donna and John's abuse and/or neglect petition without holding a hearing thereon.

■ W. Va.Code § 49–6–1 (2005) (Supp. 2009) permits a petition to be filed when a child is believed to be abused and/or neglected, dictates the procedure for filing an abuse and neglect petition, and details the court's duties once such a petition has been filed:

(a) If the department or a reputable person believes that a child is neglected or abused, the department or the person may present a petition setting forth the facts to the circuit court in the county in which the child resides, or if the petition is being brought by the [d]epartment, in the county in which the custodial respondent or other named party abuser resides, or in which the abuse or neglect occurred, or to the judge of the court in vacation. Under no circumstance may a party file a petition in more than one county based on the same set of facts. The petition shall be verified by the oath of some credible person having knowledge of the facts. The petition shall allege specific conduct including time and place, how such conduct comes within the statutory definition of neglect or abuse with references thereto, any supportive services provided by the department to remedy the alleged circumstances and the relief sought. *Upon filing of the petition, the court shall set a time and place for a hearing and shall appoint counsel for the child.* When there is an order for temporary custody pursuant to section three [§ 49–6–3] of this article, the hearing shall be held within thirty days of the order, unless a continuance for a reasonable time is granted to a date certain, for good cause shown.

(b) The petition and notice of the hearing shall be served upon both parents and any other custodian, giving to the parents or custodian at least ten days' notice. *Notice shall also be given to the department,* any foster or preadoptive parent, and any relative providing care for the child....

(c) *At the time of the institution of any proceeding under this article, the department shall provide supportive services in an effort to remedy circumstances detrimental to a child.*

(Emphasis added). Pursuant to this statutory language, once a petition has been filed alleging a child to be abused and/or neglected, the court in which such petition is filed is required to "set a time and place for a hearing." [13] W. Va.Code § 49–6–1(a). This language is mandatory and absolutely requires a hearing to be held on said petition: "In a child abuse and neglect [case], ... a court ... must hold a hearing under W. Va.Code, 49–6–2, and determine 'whether such child is abused or neglected.' Such a finding is a prerequisite to further continuation of the case." Syl. pt. 1, in part, *State v. T.C.,* 172

---

13. The manner in which this hearing is conducted is set forth in W. Va.Code § 49–6–2 (2006)

(Supp.2009).

W.Va. 47, 303 S.E.2d 685 (1983). Here, the circuit court did not hold a hearing on the petition alleging Emily to be an abused and/or neglected child, but rather dismissed the petition without a hearing. Dismissal of the petition without a hearing is a direct violation of the statutory mandate to hold a hearing on abuse and/or neglect petitions. *See* W. Va.Code § 49–6–1(a).

■ When the requisite procedure is not followed in an abuse and neglect case, this Court has held that the order resulting from such deviation will be vacated and the case will be remanded for entry of an order that satisfies the procedural requirements:

> Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order ... will be vacated and the case remanded for compliance with that process and entry of an appropriate ... order.

Syl. pt. 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001). Because W. Va.Code § 49–6–1(a) requires a circuit court presented with an abuse and neglect petition to hold a hearing thereon, and because the circuit court did not hold a hearing on the petition filed by Donna and John alleging Emily to be an abused and/or neglected child, we vacate the order entered September 23, 2008, by the Wood County Circuit Court dismissing the petition and reinstate said petition. Furthermore, we remand this case to the circuit court so that a hearing may be had on Donna and John's petition.

■ On remand, the circuit court additionally should ensure that the other requirements of W. Va.Code § 49–6–1 have been complied with, particularly the statutory directives requiring participation by the Department of Health and Human Resources, *see* W. Va.Code § 49–6–1(b), and the appointment of counsel for the subject child, *see* W. Va.Code § 49–6–1(a). Moreover, on remand, the circuit court also is directed to comply with the requirements of W. Va.Code § 49–6–2(a) (2006) (Supp.2009), which provides, in pertinent part, that counsel should be appointed to represent the minor child's biological parents during the abuse and neglect proceedings. From the record before this Court, it does not appear that Donna and John served their abuse and neglect petition on the Wood County Department of Health and Human Resources or that the Department otherwise received notice of their petition.[14] Insofar as "[n]otice shall ... be given to the department," W. Va.Code § 49–6–1(b), the Department should have been made a party to the circuit court proceedings below. Furthermore, we specifically have recognized that "the Department of Health and Human Resources has a duty to ... join or participate in proceedings to terminate parental rights...." Syl. pt. 2, in part, *In re George Glen B., Jr.*, 207 W.Va. 346, 532 S.E.2d 64 (2000). Accordingly, on remand, we direct the circuit court to grant intervenor status to the Wood County Department of Health and Human Resources to permit it to participate in the abuse and neglect proceedings concerning Emily. Inclusion of the Department also will enable it to fulfill its statutory duty to "provide supportive services in an effort to remedy circumstances detrimental to [the] child." W. Va.Code § 49–6–1(c).

■ Moreover, it has come to this Court's attention that no counsel has been appointed for Emily in the underlying abuse and neglect case. The Guardian ad Litem appointed for Emily in the preceding guardianship proceeding has appeared on her behalf in the case *sub judice,* but he has not been formally appointed to represent her in the instant proceeding. Pursuant to W. Va.Code § 49–6–1(a), "[u]pon filing of the petition [alleging a child to be abused and/or neglected], the court ... shall appoint counsel for the child." Likewise, we have held that "[e]ach child in an abuse and neglect case is entitled to effective representation of counsel." Syl. pt. 5, in part, *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993). Despite this requirement that counsel be appointed for the child subject to an abuse and neglect petition, though,

---

**14.** *See* note 10, *supra.*

no counsel has yet been appointed for Emily in this case.[15] Therefore, on remand, the circuit court is directed to appoint counsel to represent Emily in her abuse and neglect proceedings.

■ Finally, no counsel has been appointed to represent Emily's biological parents, Sylvia and Carl, in the underlying abuse and neglect proceedings. W. Va.Code § 49–6–2(a) specifically requires, in pertinent part, that,

> [i]n any proceeding under the provisions of this article, the child, his or her ... parents and his or her legally established custodian or other persons standing in loco parentis to him or her shall have the right to be represented by counsel at every stage of the proceedings and shall be informed by the court of their right to be so represented and that if they cannot pay for the services of counsel, that counsel will be appointed.... *Provided,* That such representation shall only continue after the first appearance if the parent or other persons standing in loco parentis cannot pay for the services of counsel....

In recognition of this statutory requirement, we similarly have held that

> [c]ircuit courts should appoint counsel for parents and custodians required to be named as respondents in abuse and neglect proceedings *incident to the filing of each abuse and neglect petition.* Upon the appearance of such persons before the court, evidence should be promptly taken, by affidavit and otherwise, to ascertain whether the parties for whom counsel has been appointed are or are not able to pay for counsel. In those cases in which the evidence rebuts the presumption of inability to pay as to one or more of the parents or custodians, the appointment of counsel for any such party should be promptly terminated upon the substitution of other counsel or the knowing, intelligent waiver of the right to counsel. Counsel appointed in these circumstances are entitled to compensation as permitted by law.

Syl. pt. 8, *In the Matter of Lindsey C.,* 196 W.Va. 395, 473 S.E.2d 110 (1995) (emphasis in original). *See also* Syl. pt. 1, *State ex rel. LeMaster v. Oakley,* 157 W.Va. 590, 203 S.E.2d 140 (1974) ("In child neglect proceedings which may result in the termination of parental rights to the custody of natural children, indigent parents are entitled to the assistance of counsel because of the requirements of the Due Process clauses of the West Virginia and United States Constitutions."). Even though Sylvia and Carl are entitled to be represented by counsel during Emily's abuse and neglect proceedings, no counsel has been appointed for them. Thus, during the remand proceedings, the circuit court is directed to appoint counsel to represent Sylvia and Carl in accordance with W. Va.Code § 49–6–2(a).

## IV.

## CONCLUSION

For the foregoing reasons, the September 23, 2008, order of the Circuit Court of Wood County dismissing the abuse and/or neglect petition filed by Donna and John is hereby vacated and the subject petition is reinstated. Furthermore, this case is remanded to the Wood County Circuit Court so that a hearing may be held on the aforementioned abuse and/or neglect petition. Finally, the Circuit Court of Wood County is directed to grant intervenor status to the Wood County Department of Health and Human Resources so that it may participate in the abuse and neglect proceedings on remand and to appoint counsel to represent Emily and her biological parents, Sylvia and Carl, during the remand proceedings.

Vacated and Remanded with Directions.

---

**15.** Even though he has not been appointed to represent Emily in the case *sub judice,* we wish to take this opportunity to applaud the Guardian ad Litem who represented Emily in the previous guardianship proceedings and who has, nevertheless, continued his diligent representation of Emily by appearing on her behalf before this Court in the instant matter.