# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: B.C., D.C., & B.C.**

**No. 14-1174** (Braxton County 14-JA-13, 14-JA-14, & 14-JA-15)

**FILED**

June 15, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner J.C., by counsel David Karickhoff, appeals the Circuit Court of Braxton County's October 14, 2014, order denying her status as a psychological parent to B.C.-1, D.C., and B.C.-2 in the abuse and neglect proceedings below.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Michael W. Asbury Jr., filed a response on behalf of the children supporting the circuit court's order. Petitioner filed a reply. On appeal, petitioner alleges that the circuit court erred in denying her court-appointed counsel and in finding she was not a psychological parent to the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2014, the DHHR filed an abuse and neglect petition following an investigation initiated by nine-year-old D.C.'s report to a teacher that his mother, P.C., grabbed him by the neck and hit his head into a doorknob earlier that day. P.C. is the adoptive mother of B.C.-1 and D.C. and is the legal guardian of B.C.-2 pursuant to an apparent voluntary transfer of custody by B.C.-2's father, who is an adult adoptive son of petitioner. J.C., petitioner herein, resided in P.C.'s home and, therefore, was included in the petition as a custodian. During D.C.'s disclosure, he was crying and upset and showed the teacher a knot on the back of his head that he said his mother's action caused. D.C. also produced a piece of the doorknob that dislodged during the incident. In addition to this initial disclosure, both B.C.-1 and D.C. disclosed other acts of abuse by their mother, including striking D.C. with belts, slapping B.C.-1 with the back of her hand and

---

[1]Because two children share the same initials, the Court will refer to the children as B.C.-1 and B.C.-2 throughout the memorandum decision. Further, we note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

pulling that child's hair, and forcing D.C. to shower with his clothes on in scalding hot water. According to the children, the mother created a general atmosphere of fear in the home. The children also disclosed acts of domestic violence by the mother toward petitioner, some of which culminated in the mother striking walls with a baseball bat.

The circuit court held a preliminary hearing in June of 2014. Petitioner appeared without counsel and requested a continuance in order to submit an affidavit to request appointed counsel. The circuit court granted this motion and rescheduled the preliminary hearing for June 12, 2014. Ultimately, petitioner did not qualify for appointed counsel and remained unrepresented in the proceedings below. That same month, the DHHR filed an amended petition which included additional allegations that the mother used excessive and inappropriate forms of discipline on the children, including using a baseball bat to intimidate the children, and placing D.C. in a tub of cold water until he threw up cookies he had eaten without permission. The amended petition further alleged that the mother hit the children with a spatula and a remote control, and exhibited anger control issues by pulling down shelves and breaking things in the children's room while they were present. In addition, the petition alleged that the mother violated the circuit court's initial custody order by removing B.C.-2 from his foster home and, as a result, was charged with felony child concealment and multiple misdemeanors.

In July of 2014, the circuit court held an adjudicatory hearing, during which the mother stipulated to certain allegations, including backhanding B.C.-1 and aggressively pulling B.C.-1's hair to the point the child had to pry herself away from the mother. The mother also stipulated to using inappropriate discipline and demonstrating anger management issues by pulling down shelves and breaking things in the children's room. In regard to petitioner, the DHHR indicated that, although there were no allegations of abuse or neglect against her, petitioner should remain a party to the case in the event the family was reunified because she lived in the home. The circuit court ordered petitioner to undergo a psychological evaluation prior to the dispositional hearing. The evaluation was to be performed by psychologist Sandra Walls with the supervision and assistance of Dr. Timothy Saar.

The circuit court held dispositional hearings in August and September of 2014, during which Dr. Saar testified, among other witnesses. According to her psychological evaluation, petitioner was defensive in her responses to the tests performed and she denied witnessing or experiencing any abusive or neglectful behavior by the mother. During the examination, petitioner described herself as a "nanny" to the children. Ultimately, the circuit court found that petitioner failed to adduce any evidence that she had served as the children's psychological parent, and, instead found that her role was primarily as a nanny. Consequently, the circuit court found that petitioner had no legal right to any of the children at issue. Petitioner appeals from the dispositional order.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether

such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

To begin, we find no error in the circuit court's decision not to appoint petitioner counsel for these proceedings. We have previously held that

"[c]ircuit courts should appoint counsel for parents and custodians required to be named as respondents in abuse and neglect proceedings *incident to the filing of each abuse and neglect petition*. Upon the appearance of such persons before the court, evidence should be promptly taken, by affidavit and otherwise, to ascertain whether the parties for whom counsel has been appointed are or are not able to pay for counsel. In those cases in which the evidence rebuts the presumption of inability to pay as to one or more of the parents or custodians, the appointment of counsel for any such party should be promptly terminated upon the substitution of other counsel or the knowing, intelligent waiver of the right to counsel. Counsel appointed in these circumstances are entitled to compensation as permitted by law." Syllabus point 8, *In the Matter of Lindsey C.*, 196 W.Va. 395, 473 S.E.2d 110 (1995) (emphasis in original).

Syl. Pt. 6, *In re Emily G.*, 224 W.Va. 390, 686 S.E.2d 41 (2009). While it is true that the circuit court did not immediately appoint counsel incident to the petition's filing despite petitioner being a named party custodian, we cannot find reversible error because petitioner did not qualify for appointed counsel. Petitioner submitted a financial affidavit below in order to obtain appointed counsel, but she specifically admitted that her income precluded appointed representation in her psychological evaluation. As such, any appointed counsel for petitioner would have been relieved once petitioner submitted her affidavit prior to the continued preliminary hearing.

In discussing procedural errors in abuse and neglect matters, we have stated as follows:

"[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

3

Syl. Pt. 3, *In re Emily G.*, 224 W.Va. 390, 686 S.E.2d 41 (2009). Based on the specific facts of this case, we cannot find reversible error in the circuit court's failure to appoint counsel for petitioner. As outlined above, any counsel appointed for petitioner incident to the petition's filing would have been relieved once petitioner submitted her financial affidavit establishing that she was not entitled to appointed counsel. At that point, petitioner would have been faced with the same choice she made below; either retain counsel herself or proceed pro se. As such, we cannot find that the process established for abuse and neglect proceedings was substantially disregarded or frustrated such that reversal of the circuit court's order is warranted.

Further, we find no error in the circuit court ruling that petitioner is not a psychological parent to the children at issue. We have defined a psychological parent as follows:

> A psychological parent is a person who, on a continuing day-to-day basis, through interaction, companionship, interplay, and mutuality, fulfills a child's psychological and physical needs for a parent and provides for the child's emotional and financial support. The psychological parent may be a biological, adoptive, or foster parent, or any other person. The resulting relationship between the psychological parent and the child must be of substantial, not temporary, duration and must have begun with the consent and encouragement of the child's legal parent or guardian. To the extent that this holding is inconsistent with our prior decision of *In re Brandon L.E.*, 183 W.Va. 113, 394 S.E.2d 515 (1990), that case is expressly modified.

Syl. Pt. 3, *In re Clifford K.*, 217 W.Va. 625, 619 S.E.2d 138 (2005). In the instant matter, the circuit court found that petitioner failed to meet this burden in that she "failed to adduce any evidence that she is . . . a psychological parent of the . . . children." The record shows that the only evidence presented below was that petitioner, while residing in the home, merely filled the role of a nanny to the children. In fact, both petitioner and the mother specifically referred to petitioner as the children's nanny. As such, we find no error.

For the foregoing reasons, we find no error in the decision of the circuit court and its October 14, 2014, order is hereby affirmed.

Affirmed.

**ISSUED**: June 15, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**NOT PARTICIPATING:**

Justice Robin Jean Davis