# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**March 7, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: **T.W.-1 and N.W.**

**No. 15-0910** (Kanawha County 14-JA-261 & 14-JA-262)

## MEMORANDUM DECISION

Petitioner Father T.W.-2, by counsel Edward L. Bullman, appeals the Circuit Court of Kanawha County's June 30, 2015, order terminating his parental rights to T.W.-1 and N.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the circuit court's order. The guardian ad litem, Sharon K. Childers, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner alleges that the circuit court erred in adjudicating him as an abusing parent, entering an order terminating his parental rights without holding a hearing and after having entered an order granting him an improvement period, and denying his motion for a second improvement period.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2014, the DHHR filed an abuse and neglect petition against the parents. The petition contained information regarding prior referrals against the parents that alleged substance abuse, including methamphetamine, marijuana, and heroin. The family home was described as "uninhabitable even for animals," and both parents admitted that a friend died of a heroin overdose in the front yard. The petition indicated that petitioner's adult daughter observed him snorting pills, but petitioner stated they were prescribed to him and his physician approved this method of ingesting the pills. The petition also indicated that a prior protection plan was implemented after the parents were both incarcerated and services were provided to the parents, but new allegations of abuse and neglect surfaced in July of 2014. This included T.W.-1 calling

---

[1]Because one child and petitioner share the same initials, we will refer to them as T.W.-1 and T.W.-2, respectively, throughout the memorandum decision.

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

the police to advise that her mother struck her in the face, back, and shoulders, and that petitioner was arrested for criminal possession of prescription medication. The DHHR also received a referral on August 18, 2014, that the mother overdosed on heroin and that petitioner was unable to supervise the children because of his own substance abuse. This was one of several overdoses the mother experienced around this time. The DHHR inspected the home in August of 2014, but it remained uninhabitable due to a lack of flooring, a strong smell of cat urine, exposed wiring and insulation, and cockroaches throughout. In total, there have been fourteen previous Child Protective Services referrals regarding the family.

Thereafter, petitioner waived his right to a preliminary hearing. The circuit court ordered petitioner to participate in random drug screens, supervised visitation with the children, parenting and adult life skills education, and a parental fitness evaluation. In November of 2014, the circuit court held an adjudicatory hearing, during which the mother stipulated to certain allegations and was found to be an abusing parent. The circuit court granted her an improvement period. Petitioner, however, did not stipulate to any allegations and requested that the children be returned to the home. Although the circuit court denied the request, it found that it was necessary to obtain an opinion and recommendation of a forensic evaluator before reunification could occur. As such, petitioner was ordered to continue complying with the services set forth above.

Following a review hearing in December of 2014, petitioner was granted a pre-adjudicatory improvement period, and the children were returned to the home with the stipulation that the mother not be in the home when the children were present. Petitioner's improvement period was later continued after a review hearing in February of 2015. However, in March of 2015, the circuit court terminated petitioner's pre-adjudicatory improvement period upon a finding that he was not fully complying with the terms thereof. The children were again removed from the home. Additionally, petitioner failed to appear for this hearing, though he was represented by counsel.

In April of 2015, the DHHR filed an amended petition and alleged that petitioner failed to protect the children from the mother, who continued to use drugs and whose improvement period was terminated due to her failure to cooperate. The petition alleged that petitioner allowed the mother into the home to visit and occasionally stay. In fact, a DHHR caseworker found the mother under a bed in the home during petitioner's improvement period. Moreover, the DHHR alleged that the mother physically assaulted T.W.-1 during this period, injuring the child's head. The petition also included additional allegations that petitioner tested positive for methamphetamine during the improvement period, and that T.W.-1 disclosed sexual abuse by two individuals that the parents allowed in the home. T.W.-1 also alleged that her parents knew about the abuse.

In April of 2015, the circuit court held an adjudicatory hearing on the amended petition and found petitioner abused and neglected the children by failing to protect them from the mother. Shortly thereafter, petitioner failed to attend a multidisciplinary team ("MDT") meeting in May of 2015 because he was arrested following an alleged domestic altercation with the mother.

2

The circuit court held a dispositional hearing in June of 2015. Following the hearing, the circuit court ordered the parties to submit proposed orders within thirty days. Both petitioner and the guardian submitted proposals. On June 26, 2015, the circuit court entered petitioner's proposed order granting him a post-adjudicatory improvement period. On June 30, 2015, the circuit court entered the guardian's proposed order terminating petitioner's parental rights. Shortly thereafter, petitioner filed a motion for the circuit court to clarify these conflicting orders. Thereafter, on August 24, 2015, the circuit court corrected the inadvertent entry of the June 26, 2015, order granting petitioner an improvement period by entering an order vacating that earlier order and reaffirming termination of petitioner's parental rights. Petitioner appeals from the dispositional order.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

First, the Court finds no error in regard to the circuit court finding petitioner to be an abusing parent. In support of this assignment of error, petitioner argues that the evidence was insufficient to support the circuit court's finding because he did not actually allow the children to be harmed. Specifically, petitioner does not dispute that he allowed the mother in the home when the children were present in direct contradiction of the circuit court's order, but, instead, argues that allowing the mother to be around the children did not result in any direct injury to the children. This argument only underscores petitioner's failure to recognize the danger the mother posed to the children and disregards his actual neglect of the children. Based upon the specific evidence that the mother was found hiding under a bed in the home while the children were present, the circuit court found that petitioner neglected the children by his failure to protect them from the mother.

West Virginia Code § 49-1-3(11)(A)(i) defines "[n]eglected child" as one "[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent . . . to supply the child with necessary . . . supervision, . . . when such refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent . . .

3

."[3] In the instant matter, the circuit court specifically ordered petitioner to prevent the mother from being in the home with the children because of the danger she posed to their wellbeing. Despite this specific order, petitioner allowed the mother in the home in the children's presence and thereby failed to provide the children with appropriate supervision. As such, the circuit court had sufficient evidence upon which to find that petitioner neglected the children when he allowed the mother to be in the home, despite explicit orders not to engage in such behavior. Further, pursuant to West Virginia Code § 49-1-3(2), an "[a]busing parent" is one "whose conduct, as alleged in the petition charging child abuse or neglect, has been adjudged by the court to constitute child abuse or neglect." Because the circuit court was presented with sufficient evidence to find that petitioner neglected the children, it correctly adjudicated him as an abusing parent. While petitioner argues that the mother did not harm the children when in the home, the fact remains that she presented a danger to the children, and that he failed to protect the children from her by providing inappropriate supervision. For these reasons, we find no error in the circuit court adjudicating petitioner an abusing parent.

Next, the Court finds no error in the circuit court entering two separate proposed orders from petitioner and the guardian ad litem in this matter. As outlined above, the circuit court inadvertently entered both petitioner's proposed order granting him a post-adjudicatory improvement period on June 26, 2015, and the guardian's proposed order terminating petitioner's parental rights on June 30, 2015. Shortly thereafter, petitioner filed a motion for the circuit court to clarify these conflicting orders, and on August 24, 2015, the circuit court corrected the inadvertent entry of the June 26, 2015, order by vacating it and reaffirming termination of petitioner's parental rights. On appeal, petitioner alleges that the circuit court erred in terminating his parental rights without holding a hearing, but the record is clear this argument is without merit. In fact, petitioner acknowledges that the circuit court held a dispositional hearing and provided him the opportunity to be heard as required by West Virginia Code § 49-4-604(a) and Rule 31 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings.[4]

It appears from his brief that petitioner asserts that the circuit court should have held a hearing to explain how it inadvertently entered these two opposing orders, but the Court does not agree. Petitioner cites to no authority requiring a circuit court to hold a hearing to address a clerical error, and we find that such a hearing is unnecessary given the circuit court's subsequent order vacating the June 26, 2015, order granting petitioner an improvement period. We have previously held that

> "[w]here it appears from the record that the process established by the
> Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes

---

[3]Because the adjudicatory hearing in this matter was held on April 24, 2015, prior to when the new version of West Virginia Code §§ 49-1-1 through 49-11-10 became effective, we will apply the old version of those statutes to the adjudicatory hearing.

[4]Because the dispositional hearing in this matter was held on June 8, 2015, after the new version of West Virginia Code §§ 49-1-1 through 49-11-10 became effective, we will apply the new version of those statutes to the dispositional hearing.

4

for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W.Va. 390, 686 S.E.2d 41 (2009). Upon our review, the Court finds that the circuit court's erroneous entry of the June 26, 2015, order does not constitute a substantial disregard or frustration of the applicable rules and statutes such that vacation of the order terminating petitioner's parental rights is necessary. For these reasons, petitioner is entitled to no relief in this regard.

Moreover, the record is clear that the circuit court was presented with sufficient evidence upon which to terminate petitioner's parental rights. While petitioner argues that the circuit court erred in denying him a second improvement period and in finding that he could not substantially correct the conditions of abuse or neglect, the Court does not agree. First, West Virginia Code § 49-4-610(3) provides circuit courts discretion in granting improvement periods at disposition when the parent "demonstrates, by clear and convincing evidence that the [parent] is likely to fully participate in the improvement period . . . ." While it may be true that petitioner complied with some services, such as completion of parenting and adult life skills education, the record is clear that the conditions of abuse and neglect in the home not only persisted but worsened during these proceedings. Petitioner admitted to drug use shortly prior to the dispositional hearing and his prior pre-adjudicatory improvement period was terminated, in part, because of a failed drug screen. Further, by the dispositional hearing, the circuit court was presented with evidence that petitioner stopped participating in services and missed an MDT meeting because of his arrest following a domestic altercation with the children's mother. Further, petitioner willfully disregarded the circuit court's order to prohibit the mother from entering the home when the children were present during his prior improvement period. This evidence all supports the circuit court's decision to deny petitioner a subsequent improvement period because he could not satisfy his burden of establishing that he was likely to comply with the terms thereof.

This evidence also supports the circuit court's finding that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse or neglect. Pursuant to West Virginia Code § 49-4-604(c)(3), there is no reasonable likelihood the conditions of abuse or neglect can be substantially corrected when "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child." As outlined above, petitioner failed to follow through with the efforts designed to remedy the conditions of abuse and neglect in the home. Further, the circuit court found that termination of petitioner's parental rights was in the children's best interests. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon these findings.

Further, we have previously held that

"[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 4, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). As such, it was not error for the circuit court to terminate petitioner's parental rights instead of imposing a less-restrictive dispositional alternative.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 30, 2015, order is hereby affirmed.

Affirmed.

**ISSUED**: **March 7, 2016**

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II