# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **M.F.-1, M.F.-2, and M.F.-3**

**No. 22-929** (Kanawha County 21-JA-291, 21-JA-293, and 21-JA-294)

## MEMORANDUM DECISION

Petitioner Father M.F.-4[1] appeals the Circuit Court of Kanawha County's November 23, 2022, order terminating his parental rights to M.F.-1, M.F.-2, and M.F.-3,[2] arguing that the evidence was insufficient to support petitioner's adjudication as an abusing parent. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order, as it pertains to termination of petitioner's parental rights, is appropriate. *See* W. Va. R. App. P. 21.

In May 2021, the DHS filed an abuse and neglect petition alleging that petitioner was an abusing parent to his three children, M.F.-1, M.F.-2, and M.F.-3. The petition alleged that petitioner killed V.B., the mother of M.F.-3,[3] while M.F.-3 was present in the home. According to the petition, petitioner called 9-1-1 and stated that he got into a physical altercation with the mother

---

[1] Petitioner appears by counsel Jeremy B. Cooper. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Andrew T. Waight. Counsel Sharon K. Childers appears as the children's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Additionally, because the children and petitioner all share the same initials, we refer to the children as M.F.-1, M.F.-2, and M.F.-3, respectively, and petitioner as M.F.-4.

[3] Although she is the mother to only one child at issue, we will refer to V.B. throughout as "the mother."

1

and that he stabbed her. Officers and medical personnel arrived at the residence to find the mother deceased, lying on the living room floor with multiple stab wounds on her body and covered in blood.

The circuit court held adjudicatory hearings on March 25, 2022, and April 22, 2022. At the April hearing, the court heard testimony from several law enforcement officers: Patrolman Carte, Detective Spaulding, and Patrolman Whittington. They testified that officers were dispatched to the residence in reference to "a male calling in saying he had an argument with his fiancée and that he stabbed her in the neck." Upon arrival, Ptlm. Whittington observed M.F.-3 lying on a bed in the living room, a few feet from the deceased mother and the knife. Ptlm. Carte testified that he observed a puncture wound on petitioner's left hand and noted blood on both his hands. Det. Spaulding testified that the mother's autopsy report showed six to seven defensive wounds on her hands, consistent with someone putting their hands up to protect themself. He described the wound on the back of petitioner's hand, however, as indicative of an offensive wound, explaining that this kind of wound is more likely to occur when the person wielding the knife strikes the top of their other hand accidentally. Petitioner declined to testify or present evidence.

Ultimately, the circuit court found that the officers' testimony was uncontroverted; that petitioner murdered the mother of M.F.-3, who was located in the same room as his deceased mother when officers arrived; that the murder of a child's mother is an aggravated circumstance, as defined by West Virginia Code § 49-4-604(c)(7)(B)(i);[4] and that the abuse and neglect of M.F.-3 extends to M.F.-1 and M.F.-2. Accordingly, the circuit court adjudicated petitioner as an abusing parent. The circuit court held a dispositional hearing in July 2022 where, based upon the evidence, the court concluded that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and that termination of petitioner's parental rights was necessary for the welfare of the children. Accordingly, the court terminated petitioner's parental rights to the children.[5] It is from this order that petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Petitioner argues that the circuit court erred in adjudicating him as an abusing parent in the absence of a record that established by clear and convincing evidence that he committed a murder as alleged in the petition. This argument, however, is not persuasive, because it was unnecessary for the court to make a finding as to

---

[4] We note that a finding of aggravated circumstances under West Virginia Code § 49-4-604(c)(7)(B)(i) is a dispositional consideration regarding circumstances where the DHS is not required to make reasonable efforts to preserve the family. On appeal to this Court, petitioner does not challenge the DHS's lack of such efforts. Accordingly, it is unnecessary to address this ruling.

[5] M.F.-1 and M.F.-2 remain in the custody of their mother. The permanency plan for M.F.-3 is adoption in his current kinship placement.

whether petitioner committed murder for either adjudication or the termination of petitioner's parental rights.[6]

According to West Virginia Code § 49-1-201, an "[a]bused child" is defined, in part, as one "whose health or welfare is being harmed or threatened by . . . [d]omestic violence as defined in § 48-27-202 of this code." According to West Virginia Code § 48-27-202, domestic violence "means the occurrence of one or more of the following acts between family or household members, as that term is defined in section two hundred four of this article: (1) [a]ttempting to cause or intentionally, knowingly or recklessly causing physical harm to another with or without dangerous or deadly weapons." Here, the record is uncontroverted that petitioner either intentionally, knowingly, or recklessly caused physical harm to a family member[7] when he stabbed the mother to death. In fact, petitioner acknowledges in his appellate brief that the evidence demonstrated that the mother "was ultimately dealt a fatal blow to the neck" after a physical altercation between the two. Further, petitioner admits that both he and the mother had wounds on their hands, although he omits that the evidence clearly established the mother's wounds were defensive while his own single wound was offensive. Simply put, the circuit court did not err in finding that petitioner perpetrated extreme violence against the mother while M.F.-3—whom law enforcement found mere feet from the knife and his deceased mother—was in the home.

As the court concluded, this conduct was so egregious that it also threatened the welfare of M.F.-1 and M.F.-2 by extension. While we recognize that the circuit court couched its adjudicatory findings in terms of murder, it was unnecessary to do so, and we find that the circuit court did not err by adjudicating petitioner as an abusing parent to all three children. *See* Syl. Pt. 7, in part, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (holding that West Virginia Code § 49-4-601(i) requires the DHS to "prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing proof'") (citations omitted)); Syl. Pt. 2, *Adkins v. Gatson*, 218 W. Va. 332, 624 S.E.2d 769 (2005) ("'This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment.' Syllabus point 3, *Barnett v. Wolfolk*, 149 W.Va. 246, 140 S.E.2d 466 (1965).").

Finally, petitioner argues that the circuit court's adjudicatory order is insufficient and inadequate, pointing out that Rule 27 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings states that, at the conclusion of the adjudicatory hearing, "the court shall make findings of fact and conclusions of law, in writing or on the record, as to whether the child is abused and/or neglected." We find, however, that the circuit court's order comports with this rule.

---

[6] Although petitioner was charged with the crime of murder, his criminal case is still pending. Nonetheless, Rule 5 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings directs that no civil child abuse and neglect case shall be delayed pending a criminal proceeding. We emphasize that nothing in this Court's decision regarding this abuse and neglect matter should be construed as commenting on petitioner's criminal case.

[7] West Virginia Code § 48-27-204 defines "family or household members" to include persons who "have a child in common regardless of whether they have ever married or lived together."

Specifically, the circuit court's adjudicatory order stated that the testimony of the officers was uncontroverted, that M.F.-3 was found in the home near his deceased mother and the knife, that petitioner was found covered in the mother's blood, and that petitioner's egregious conduct extended to all three children. We cannot say that the abuse and neglect process was substantially disregarded or frustrated, and, thus, petitioner is entitled to no relief. *See* Syl. Pt. 3, in part, *In re Emily G.*, 224 W. Va. 390, 686 S.E.2d 41 (2009) (requiring vacation of an order where "the process . . . for the disposition of cases involving children [alleged] to be abused or neglect has been substantially disregarded or frustrated").

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 23, 2022, order, as it pertains to the termination of petitioner's parental rights, is hereby affirmed.

Affirmed.

**ISSUED**: March 20, 2024

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn