# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **M.W., A.T., & J.T. III,**

**No. 15-0196** (Raleigh County 12-JA-151-K, 12-JA-152-K, & 12-JA-153-K)

**FILED**

November 23, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Grandmother N.T., by counsel Timothy P. Lupardus, appeals the Circuit Court of Raleigh County's February 2, 2015, order terminating her custodial rights to M.W., A.T., and J.T.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Melinda C. Dugas, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Amber R. Easter, filed a response on behalf of the children supporting the circuit court's order. On appeal, petitioner alleges that the circuit court erred in terminating her custodial rights without holding a dispositional hearing and in denying her post-termination visitation with the children.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In November of 2012, the DHHR filed an abuse and neglect petition against the parents after M.W. was born exhibiting signs of chemical addiction and withdrawal and had to be put on

---

[1] The Court notes that in terminating petitioner's rights to these children, the circuit court specifically stated that "[a]ll interests of [petitioner] regarding these children should be terminated and/or barred, [of] whatever nature, including rights of guardianship, custodial rights, rights of a psychological parent, grandparent's rights, option of placement, and visitation privileges." In the interest of brevity, the Court will refer to the circuit court's termination of all possible rights as "custodial rights" in this memorandum decision, but note that this language is not meant to limit the circuit court's full termination of any and all of petitioner's rights to these children below. Moreover, because the child J.T. III shares the same initials as other individuals involved in the case, the child will be referred to as J.T.-1 and the other individuals will be referred to as J.T.-2 and J.T.-3.

[2] We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

1

methadone. A.W., the children's biological mother, admitted to using Roxicodone and heroin during her pregnancy. Child Protective Services ("CPS") was previously involved with the mother in 2009 when she was the subject of an investigation due to her Lortab addiction. At the time of M.W.'s birth, A.W. was living with petitioner, and the child's father, J.T.-2, was incarcerated.[3] In January of 2013, the DHHR amended the petition to include petitioner as a respondent after learning that her grandsons were placed in her custody by a Virginia court in March of 2012, pursuant to an abuse and neglect case involving the same parents.

In May of 2013, the DHHR initiated a home study of petitioner's home to determine if it was an appropriate placement for the children. However, upon learning that the children's grandfather, J.T.-3, a convicted sex offender who is required to register as such for life, moved back into the home upon his release from incarceration, the DHHR removed the children. Petitioner denied knowing that her husband is a convicted sex offender during this home study. The petition was then amended a second time to include this information. The first home study also revealed that petitioner's other son, T.T., was also residing in the home. Although petitioner told the DHHR that T.T. had never been in trouble criminally, it was later discovered that he is a convicted felon whose own parental rights had previously been terminated. Ultimately, it was determined that petitioner could not pass the home study because of a prior CPS substantiation of abuse and neglect in the home, the family's extensive criminal history, and the state of the home, which was not in compliance with established standards. The petition was amended a third time to include information about petitioner's CPS history.

In August of 2013, petitioner stipulated to allegations of abuse and neglect by knowingly allowing a registered sex offender in the home with the children. Petitioner testified that her husband subsequently moved out of the home. As such, a second home study was conducted. During this home study it was discovered that petitioner's history with her husband spans approximately twenty-five years and that the grandfather has spent the majority of his life in prison for numerous crimes. Most concerning, however, is that he was convicted of sexual crimes against a child. At the time of the home study, the grandfather was facing multiple additional charges for failing to register as a sex offender. Petitioner married the grandfather several years prior to these proceedings while he was still incarcerated. When asked if she planned to divorce the grandfather, petitioner responded that she waited nineteen years on him to be released and that she was not going to divorce him now. During this home study, the DHHR also uncovered petitioner's own extensive criminal history, which included arrests for possession of a controlled substance and receiving stolen property. Petitioner also had a prior domestic violence protective order issued against her. This is all in spite of petitioner having told the DHHR she had never been arrested. Further, during an unscheduled home visit, a CPS worker found an unreported individual in the home who is known to CPS as an abusing parent whose parental rights had been terminated.

Around this same period, petitioner was granted supervised visitation with the children, but the visits were not successful and had a detrimental effect on the children. Petitioner was inconsistent with visits, failed to understand her infant granddaughter's needs, and failed to appreciate safety concerns in the environment. At a dispositional hearing for the father in

---

[3]It is unclear from the record where J.T.-1 resided at the time the petition was filed.

December of 2014, the circuit court was informed that a multidisciplinary team ("MDT") meeting to address petitioner's request for visitation was cancelled. The DHHR explained that it terminated petitioner's visitation with the children because of safety concerns and the negative impact on the children. The circuit court found that petitioner's request for visitation was tied to the disposition of the father's parental rights and took the matter under advisement. Ultimately, the circuit court entered an order terminating the father's parental rights, terminating petitioner's custodial rights, and denying petitioner's request for visitation. It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court's termination of petitioner's custodial rights or in denying her post-termination visitation.

While it may be true that the circuit court failed to provide petitioner, as a named respondent to the proceedings below, a full dispositional hearing as required by West Virginia Code § 49-6-5, it is clear that she was afforded due process by virtue of her many opportunities to be heard, in accordance with West Virginia Code § 49-6-2. The record is clear that petitioner fully participated in the proceedings below, as she testified on her own behalf, was provided with the opportunity to present witnesses, cross-examined witnesses, participated in MDT meetings, was appointed counsel, and was granted an improvement period.[4] In fact, at the final hearing in this matter, petitioner fully participated and cross-examined the sole witness presented during that hearing.

As to petitioner's allegation that the circuit court erred in denying her a dispositional hearing, we have previously held that

---

[4]It does not appear from the record that petitioner actually presented any witnesses on her behalf. However, the record is also devoid of any evidence that this lack of witnesses was due to the circuit court limiting her ability to do so, as opposed to a specific strategy against offering witnesses or a lack of witnesses favorable to petitioner.

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W.Va. 390, 686 S.E.2d 41 (2009). Based upon the specific facts of this case, the Court finds that the circuit court's failure to hold a dispositional hearing specific to petitioner does not constitute such a frustration or disregard of the applicable rules that reversal of the circuit court's order is warranted. This is especially true in light of the fact that petitioner was precluded from exercising custody over the children because of her multiple failed home studies, her failure to comply with the services implemented to correct the conditions of abuse and neglect in the home, and her own criminal activity.

The record is clear that, at the time of the final hearing below, petitioner already failed two home studies because of "a number of unfavorable circumstances." These unfavorable circumstances included the following: (1) petitioner's failures regarding drug screens, such as her failure to provide the DHHR with a list of her prescribed medications, a screen that showed elevated levels of "certain substances" that were then absent upon the following screen, missing several screens, and one screen being termed "dilute;" (2) petitioner's lack of compliance with the home study process, including her multiple untruthful responses during interviews; (3) a substantiated CPS case against petitioner; (4) a prior domestic violence protective order against petitioner; (5) petitioner's incarceration for "undisclosed charges" during the pendency of the abuse and neglect proceedings; (6) and, petitioner's admission that her husband is a convicted sex offender and the fact she allowed the children to reside in the home with the husband. Additionally, the DHHR noted that petitioner exhibited an inability to properly parent the children during supervised visitations. Specifically, the provider had to "guide the visit(s)" to ensure the children's safety because petitioner "did nothing to manage or control the children." Further, the provider had to prompt petitioner to change the infant child's diaper and properly care for a child of that age.

As such, it is clear that the circuit court had sufficient evidence before it to support its finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. Pursuant to West Virginia Code § 49-6-5(b)(3) a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing [party has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child . . . .

As outlined above, petitioner failed to comply with services in this matter designed to remedy the conditions of abuse and neglect. In fact, the conditions in the home worsened during the course of the proceedings, as evidenced by petitioner's own incarceration on unspecified criminal charges. As such, it is clear that the circuit court did not err in making this finding, or in finding that the children's welfare necessitated termination of her custodial rights. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental, custodial, and guardianship rights upon these findings. It is also important to note that, at the time of the final hearing below, petitioner admittedly was not seeking custody of the children and, instead, sought only to restore her visitation with them. For these reasons, it is clear the circuit court had substantial evidence upon which to base termination of petitioner's custodial rights.

As to petitioner's assignment of error regarding the circuit court denying her post-termination visitation, the Court finds no error in this regard. On appeal, petitioner alleges that the circuit court failed to consider the close bond between her and the children, one of whom she asserts that she "essentially raised since birth." The Court, however, disagrees. Simply put, there is nothing in the record to indicate that the circuit court did not consider the bond between petitioner and the children. To the contrary, it is clear that the evidence below overwhelmingly established that continued visitation with petitioner was not in the children's best interests. Specifically, the circuit court found that visitation between petitioner and the children was ceased because of her conduct and the negative impact visitation had on the children. According to a CPS worker's testimony, the children exhibited negative behaviors after visitations with petitioner, including "aberrant and aggressive behavior in school and at daycare." As such, the service provider testified that visitation should not be re-established.

On appeal, petitioner argues that the "guiding principle" in determining whether continued contact with a child should be ordered is whether a strong emotional bond exists between the children and the individual. Petitioner's argument on this issue, however, is an inaccurate representation of the law governing such visitation. Specifically, West Virginia Code § 48-10-101 states as follows:

> The Legislature finds that circumstances arise where it is appropriate for circuit courts or family courts of this state to order that grandparents of minor children may exercise visitation with their grandchildren. The Legislature further finds that in such situations, as in all situations involving children, the best interests of the child or children are the paramount consideration.

Further, West Virginia Code § 48-10-501 provides that "[t]he circuit court shall grant reasonable visitation to a grandparent upon a finding that visitation would be in the best interests of the child . . . ." While it is true that West Virginia Code § 48-10-502(2) lists the relationship between the grandparent and the children as a factor to be considered, it is clear that this factor is not controlling. Because the circuit court clearly found that continued visitation with petitioner was not only against the children's best interests, but also actively detrimental to their well-being, the Court finds no error in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 2, 2015, order is hereby affirmed.

5

Affirmed.

**ISSUED**: November 23, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Justice Robin Jean Davis