STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

FILED

September 6, 2016

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: **B.S. and A.S.**

**No. 16-0336** (Cabell County 14-JA-175 & 14-JA-176)

**MEMORANDUM DECISION**

Petitioner Mother A.G., by counsel Abraham J. Saad, appeals the Circuit Court of Cabell County's December 21, 2015, order terminating her parental rights to two-year-old B.S., and three-year-old A.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Jacquelyn S. Biddle, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner alleges that the circuit court erred in terminating her parental rights without requiring the DHHR to file a family case plan and terminating her parental rights when she substantially complied with her improvement period.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On February 24, 2014, B.S. was born exhibiting signs of drug withdrawal. Subsequently, B.S.'s umbilical cord screen was positive for morphine, opiates, heroin, and marijuana. Thereafter, B.S. was placed on methadone and remained hospitalized for several months before ultimately being released under petitioner's care. During this time, the DHHR implemented an in-home safety plan and began offering petitioner services. While petitioner initially complied with services and passed several drug screens, petitioner then tested positive for cocaine.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below

1

In April of 2014, Child Protective Services ("CPS") was notified that B.S. was hospitalized at the Cabell Huntington Hospital. B.S. was unresponsive, having seizures, and had gone from the fiftieth percentile in weight at birth to the third percentile. As a result of B.S.'s hospitalization, the DHHR filed a petition for abuse and neglect in August of 2014 against petitioner alleging that she abused controlled substances, which impaired her ability to properly parent her children. The DHHR also alleged that petitioner failed to cooperate with services implemented following the birth of B.S.

Thereafter, the DHHR filed a "court summary" indicating that petitioner tested positive for cocaine on July 10, 2014, and failed to regularly submit to random drug screens as previously directed. Thereafter, petitioner tested positive for opiates on September 24, 2014. Importantly, the DHHR unsuccessfully attempted to set up services for petitioner. In December of 2014, the circuit court held an adjudicatory hearing during which petitioner stipulated that her drug abuse affected her ability to appropriately parent her children. Petitioner also admitted that she used heroine "a couple weeks ago, two weeks." Based upon petitioner's admissions, the circuit court adjudicated petitioner as a "neglectful parent."[3] Significantly, the circuit court told petitioner "that if you don't get some in-patient treatment I'm going to take your child[ren] away from you[.]" Petitioner affirmatively acknowledged that the circuit court required her to participate in an in-patient program. As such, the circuit court granted petitioner a six-month improvement period. The circuit court specifically directed petitioner to submit to drug screens and enter a drug program. Following a hearing in March of 2015, the circuit court directed petitioner to immediately submit to a drug screen, which she failed to do. Despite petitioner's noncompliance, the circuit court continued petitioner's improvement period by order entered on April 2, 2015.

The circuit court held another hearing in June of 2015, during which the DHHR indicated that petitioner was "at times" compliant with services. However, petitioner failed to submit to a drug screen immediately following this hearing as ordered by the circuit court. Thereafter, the circuit court held a status hearing in September of 2015, during which petitioner admitted that she disobeyed the circuit court's orders to submit to drug tests following the previous hearings. Furthermore, the circuit court heard proffers that petitioner's parenting provider terminated services due to noncompliance and that petitioner has not been in contact with CPS since July of 2015. By order entered on November 5, 2015, the circuit court terminated petitioner's improvement period due to her noncompliance. However, the circuit court ordered petitioner to submit to a drug screen immediately following the hearing and as directed until the dispositional hearing.

The following month, the circuit court held a dispositional hearing during which counsel proffered that petitioner did not submit to a drug screen following the September 23, 2015, hearing as ordered. The CPS worker testified that the multidisciplinary team developed a family

---

[3]The Court notes that pursuant to West Virginia Code § 49-1-201, an "abusing parent" is defined as "a parent, guardian or other custodian . . . whose conduct has been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging child abuse or neglect." Because this definition governs parents who commit both abuse and neglect against children, and because the pertinent statute has purposefully omitted a definition of "neglecting parent," the Court will use the appropriate statutory term throughout this memorandum decision.

case plan and implemented multiple services, including parenting and adult life skills, drug treatment, and drug screens. According to the CPS worker, petitioner failed to complete parenting and adult life skills classes, failed to submit to drug screens following every hearing, and failed to routinely participate in random drug screens throughout the proceedings. Petitioner testified that she stopped attending Narcotics Anonymous meetings, did not submit to drug screens following the previous hearings because she "probably would have been dirty," and did not complete her original drug treatment program at the Bob Mays Recovery Center. Based upon the evidence, the circuit court found that petitioner failed to seek treatment and maintain her sobriety and disobeyed two court orders. The circuit court further found that there was no reason to believe that "the conditions that continue to exist to this date will improve in the near future." Consequently, the circuit court terminated petitioner's parental rights to the children. This appeal followed

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights without requiring the DHHR to file a family case plan pursuant to West Virginia Code § 49-4-408(a).[4] *See also* Rule 23 of the Rules of Procedure for Child Abuse and Neglect Proceedings (stating that if circuit court grants improvement period, DHHR shall submit family case plan within thirty days of circuit court's order). Petitioner submits that the filing of this case plan is mandatory and that the failure to file this plan left "[her] with no standard of measurement for

---

[4]West Virginia Code § 49-4-408(a) in part, provides that

> [t]he Department of Health and Human Resources shall develop a unified child and family case plan for every family wherein a person has been referred to the department after being allowed an improvement period or where the child is placed in foster care. The case plan must be filed within sixty days of the child coming into foster care or within thirty days of the inception of the improvement period, whichever occurs first.

which to improve upon during her post-adjudicatory improvement period and adjudication." With regard to family case plans, this Court has stated that

> "[t]he purpose of the family case plan as set out in W.Va. Code [§] 49-6D-3(a) (1984), is to clearly set forth an organized, realistic method of identifying family problems and the logical steps to be used in resolving or lessening these problems." Syl. Pt. 5, *State ex rel. Dep't of Human Services v. Cheryl M.*, 177 W. Va. 688, 356 S.E.2d 181 (1987).

Syl. Pt. 2, *In re Desarae M.*, 214 W.Va. 657, 591 S.E.2d 215 (2003). We have also stated that

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W.Va. 390, 686 S.E.2d 41 (2009).

While petitioner is correct that the DHHR failed to file a family case plan, the Court does not find reversible error on this issue under the specific limited circumstances of this case because petitioner was aware of the issues that needed resolved in order to remedy the underlying conditions of abuse and neglect. Importantly, a family case plan was developed and services were implemented to resolve these problems. The record on appeal in this case is clear that petitioner admitted that her drug abuse affected her ability to appropriately parent her children. While this Court reminds the circuit court of its duty to adhere to the Rules of Procedure for Child Abuse and Neglect Proceedings, we do not find that the failure to file the family case plan "substantially disregarded or frustrated" the process established by the rules in this case. Petitioner had clear knowledge that she needed to remedy her drug abuse problem in order for her to reunify with her children, but failed to make the necessary improvements. During the adjudicatory hearing, petitioner specifically agreed to check herself into an in-patient drug treatment facility. Furthermore, petitioner acknowledged that she did not complete her adult life skills classes, stopped attending Narcotics Anonymous meetings, disobeyed the circuit court's order to submit to drug screens following several hearings because she "probably would have been dirty," and did not complete her original drug treatment program. Although we are concerned about the allegations that the DHHR failed to follow procedures such as the proper filing of the family case plan, we conclude that such alleged omissions do not warrant reversal in light of all the circumstances in this case.

Finally, petitioner argues that the circuit court erred in terminating her parental rights when she substantially complied with her improvement period. The Court, however, does not agree. This Court has previously held that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs

any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W.Va. 57, 754 S.E.2d 743 (2014). The record is clear that petitioner failed to complete many aspects of her improvement period. The circuit court heard testimony that petitioner failed to complete her adult parenting classes and that her service providers discontinued services in July of 2015 due to her noncompliance. Petitioner also admitted that she did not submit to drugs screens following multiple hearings because she believed that she would have tested positive. While it is true that petitioner attempted to comply with services by admitting herself to an in-patient drug rehabilitation center, she plainly acknowledges that she quit that treatment program. Simply put, petitioner ultimately failed to resolve the issues of abuse and neglect such that returning the children to her care would not be in the children's best interests. As such, it is clear that petitioner failed to successfully complete her improvement period and that termination of her parental rights was warranted.

For the foregoing reasons, we find no error in the circuit court's December 21, 2015, order, and we hereby affirm the same.

Affirmed.

**ISSUED**: September 6, 2016

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II