**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**November 22, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: C.B., M.B., J.B., and B.B.

No. 17-0505 (Wayne County 16-JA-117, 16-JA-118, 16-JA-119, & 16-JA-153)

**MEMORANDUM DECISION**

Petitioner Mother A.B., by counsel Shawn Bartram, appeals the Circuit Court of Wayne County's May 2, 2017, order terminating her parental rights to C.B., M.B., J.B., and B.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Melia Atwell Adkins, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motions to dismiss the amended petition for lack of jurisdiction and terminating her parental rights without proper notice.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the initiation of the current proceeding in circuit court, the DHHR filed a prior abuse and neglect petition in July of 2009 that alleged petitioner abused children C.B., M.B., J.B. and M.M.[2] At the time of M.M.'s birth, petitioner tested positive for benzodiazepines and opiates. The DHHR implemented an in-home safety plan, during which petitioner tested positive for opiates. Further, the DHHR was later alerted that M.M., then three weeks old, had been taken to the emergency room following a domestic violence incident for which petitioner was later charged criminally with child endangerment. At the hospital, law enforcement believed petitioner to be under the influence. She submitted to a drug screen and tested positive for oxycodone, benzodiazepines, and opiates. Based on these allegations, the DHHR sought custody

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]Because petitioner voluntarily relinquished her parental rights to M.M. during the earlier abuse and neglect proceeding and, therefore, was not at issue in the current proceeding in circuit court, that child is not at issue in this appeal.

of M.M. and the other children. After adjudicating petitioner of abuse due to domestic violence, drug abuse, and instability in the home, among other issues, the circuit court ultimately granted permanent legal guardianship of C.B., M.B., and J.B. to their paternal grandmother, S.R. That matter was then stricken from the circuit court's docket.

In the proceedings currently on appeal, the DHHR filed an abuse and neglect petition in September of 2016 after receiving a referral that petitioner and the children had been evicted from their home, although they were alleged to have broken back into the home.[3] The referral also alleged that there was a lack of food in the home. According to a neighbor, the children lacked proper nutrition and were only fed when either the neighbor or G.M., the mother of petitioner's boyfriend, brought them food. The neighbor further alleged that petitioner and her boyfriend left the children alone while they obtained Suboxone in the State of Ohio. At the time, petitioner was pregnant with child B.B. and was allegedly not receiving appropriate prenatal care. The DHHR found petitioner and her boyfriend at G.M.'s home in Wayne County, West Virginia. According to the DHHR, the home was determined to be structurally unsafe due to portions of the ceiling falling and weak floors. The DHHR further alleged that there were no appropriate places for the children to sleep, in addition to drug paraphernalia throughout the home. Petitioner, her boyfriend, and the boyfriend's mother appeared under the influence of drugs. In fact, the boyfriend's mother was arrested on drug charges subsequent to the DHHR's investigation. Moreover, the children were able to describe petitioner's intravenous drug use.

In October of 2016, the circuit court held a preliminary hearing, during which it ratified the DHHR's emergency custody of the children. On November 18, 2016, the circuit court held an adjudicatory hearing and found that petitioner neglected the children by virtue of her substance abuse, unstable housing, and failure to cooperate with the DHHR.

Also in November of 2016, petitioner gave birth to B.B., who was born with Suboxone in her system. Petitioner gave birth in the State of Ohio. The DHHR received a referral from authorities in that state regarding the child's withdrawal symptoms and the parents' apparent abandonment of the child at the hospital. Before signing out of the hospital to smoke, petitioner refused to have the child transferred to Point Pleasant Valley Hospital in Mason County, West Virginia, in order to better treat her symptoms. However, due to the child's withdrawal symptoms, the decision to transfer the child for treatment was made after attempting to contact petitioner, to no avail. Several hours later, petitioner returned to the hospital as the child was being placed in an ambulance for transport to a hospital in Cabell County, West Virginia. After the child was en route, petitioner was overheard contacting her aunt, who lived in Ohio, to ask permission to stay at her residence overnight. Upon arrival in West Virginia, the child was placed in the neonatal intensive treatment unit because she was "in bad shape." Accordingly, the DHHR filed an amended petition to include child B.B.

In December of 2016, the circuit court held a preliminary hearing, during which petitioner moved to dismiss the amended petition due to an alleged lack of jurisdiction.

---

[3]It is unclear from the record why the children were not in the custody of S.R., the paternal grandmother who was granted legal guardianship of them at the conclusion of the prior abuse and neglect proceeding.

According to petitioner, B.B. was a resident of Ohio because she was born in that state. The circuit court denied the motion. The circuit court heard testimony in support of B.B.'s emergency removal. According to testimony, a DHHR worker drove to the hospital in Ohio where B.B. was born after receiving a referral in an attempt to speak to petitioner and the father. However, the parents left the hospital and did not return for over nine hours. The DHHR worker made at least ten phone calls to phone numbers the parents provided the week before, but could not reach them. The circuit court heard further evidence that, upon arriving in Cabell County, B.B. had to be placed on Methadone and Clonodine to combat her severe withdrawal symptoms. It was further determined that petitioner obtained Suboxone illegally, not from a clinic by prescription. Petitioner also abused other controlled substances during her pregnancy. A DHHR worker also testified to statements from petitioner's aunt regarding the parents' alleged residency at her home in Ohio. According to the DHHR, the aunt stated that the parents had not stayed at the home for five days prior to the birth and only stayed there occasionally. The parents did not enter into a lease or any other binding agreement regarding their alleged residence in the home. Moreover, the only item in the room they were alleged to stay in was a mattress turned on its side that the aunt indicated needed to be discarded due to an infestation of insects. Because petitioner was overheard asking permission to stay at the aunt's residence overnight, the DHHR did not believe she lived there. The circuit court ultimately ratified the DHHR's emergency custody of the child.

In January of 2017, the circuit court held an adjudicatory hearing in regard to B.B. Petitioner stipulated that the child was born addicted to Suboxone, and the circuit court granted her an improvement period. However, petitioner tested positive for amphetamines, methamphetamines, and Suboxone. At a later hearing, it was determined that petitioner opposed inpatient substance abuse treatment and detoxification. Based upon the evidence, the circuit court terminated petitioner's improvement period prior to the dispositional hearing.

In April of 2017, the circuit court held a dispositional hearing, during which petitioner renewed her motion to dismiss. The circuit court denied that motion and ultimately terminated her parental rights to the children.[4] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire

---

[4]Petitioner's parental rights to the children were terminated below. The parental rights of father of B.B. were also terminated below, while the father of C.B., M.B., and J.B. is deceased. According to the DHHR, children C.B., M.B., and J.B. have been placed in the home of their paternal great-aunt with a permanency plan of adoption in that home. Child B.B. was placed in a foster home. The permanency plan for that child is transition into the home of the paternal great-aunt for adoption along with the siblings.

evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

On appeal, petitioner alleges that the circuit court erred in denying her motions to dismiss the amended petition for lack of jurisdiction because the baby was born in Ohio and, thus, was a resident of Ohio. Petitioner further alleges that both she and the father moved back to Ohio prior to the child's birth and were also residents of that state. The evidence, however, does not support these arguments. According to West Virginia Code § 49-4-601(a), "the [DHHR] . . . may present a petition setting forth the facts to the circuit court in the county in which the child resides, or . . . in the county in which the custodial respondent or other named party abuser resides . . . ." Here, the record is clear that both parents remained residents of Wayne County, West Virginia, despite their assertions that they changed residence to the State of Ohio.

Petitioner gave birth to B.B. in November of 2016. That same month, B.B.'s father testified at the adjudicatory hearing on the original petition that the parents lived in Wayne County and that their children were enrolled in school there. Further, petitioner corroborated B.B.'s father's testimony that she and the children lived in Wayne County, West Virginia. However, petitioner also testified that the family had a home in Ohio for the past year and that her "landlord kept . . . [her] lease in place" while she lived in Wayne County, West Virginia. This testimony, however, was later contradicted by testimony from a DHHR employee and statements from petitioner's aunt.

At the preliminary hearing on the amended petition held in December of 2016, a DHHR worker testified that petitioner and her boyfriend did not have a lease on a residence in Ohio, as petitioner claimed. Instead, the home in question belonged to petitioner's aunt. The DHHR worker visited the home two days after the November of 2016 adjudicatory hearing and was informed that, although the aunt sometimes permitted petitioner and the boyfriend to stay the night in the home, they were not subject to any lease for residency at the property and they had not stayed there in approximately five days. In further support of the fact that the home was not the actual residence of either petitioner or her boyfriend, the DHHR worker testified that, on the night B.B. was removed from their custody, the worker overheard petitioner call the aunt and ask permission to stay there overnight. Moreover, the DHHR worker testified that the only item in the room in which petitioner and the boyfriend were alleged to have stayed was a mattress propped on its side against a wall that the aunt indicated was infested with bed bugs and needed to be removed. In short, while there may have been evidence that petitioner and boyfriend stayed at the aunt's home for short periods on occasion, there was simply no evidence that they resided in that home. We have previously held that "[a] circuit court has jurisdiction to entertain an abuse and neglect petition and to conduct proceedings in accordance therewith as provided by [West Virginia Code § 49-4-601] et seq." Syl. Pt. 2, *In re J.L.*, 234 W.Va. 116, 763 S.E.2d 654

4

(2014). Because the only evidence of petitioner's residency presented below established that she resided in Wayne County, West Virginia, we find that the circuit court had jurisdiction to proceed on the amended petition.

Finally, petitioner argues that the circuit court erred in proceeding to disposition without granting her notice of the hearing under Rule 31 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings and without requiring the DHHR to provide her information under Rule 30. We do not agree. First, petitioner admits that the order setting the matter for disposition was mailed to all parties and "reflected a time[,] date[,] and place of the dispositional hearing . . . ." Further, the record is clear that petitioner's counsel was present for the hearing, despite petitioner's failure to attend. According to Rule 31 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, "Notice of the date, time, and place of the disposition hearing shall be given to all parties, their counsel, and persons entitled to notice and the right to be heard." While petitioner argues that "there [was] no certification that [she] actually received notice of said hearing[,]" we find that it is clear that petitioner received adequate notice as contemplated by that rule.

Further, according to Rule 30 West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings,

> [a]t least five (5) judicial days prior to the disposition hearing, each party shall provide the other parties, persons entitled to notice and the right to be heard, and the court a list of possible witnesses, with a brief summary of the testimony to be presented at the disposition hearing, and a list of issues of law and fact.

Petitioner alleges that the DHHR did not provide her with this information, and we see no indication in the record that such information was provided. However, we find that, under the limited circumstances of this case, petitioner is not entitled to relief in this regard.

We have held that

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W.Va. 390, 686 S.E.2d 41 (2009). Petitioner makes much of the DHHR's alleged failure to notify her of its intention to seek termination of her parental rights. However, neither Rule 30 nor 31 require the DHHR to plainly state its intention to request termination of parental rights. Moreover, it is apparent from the record that the DHHR would take that position at disposition, given the fact the circuit court terminated petitioner's improvement period shortly before the dispositional hearing based upon her positive drug screens, refusal to submit to inpatient substance abuse treatment, and the ongoing issues of

domestic violence that necessitated the second removal of B.B., among other issues. At the dispositional hearing, the DHHR presented testimony from only one witness, the same DHHR employee who testified to petitioner's actions during the November of 2016 adjudicatory hearing and the December of 2016 preliminary hearing. As such, it is clear that petitioner was not prejudiced by the DHHR's failure to provide the information required under Rule 31. Accordingly, under the limited circumstances of this case, we find that the DHHR's failure to comply with this rule did not substantially disregard or frustrate the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of abuse and neglect cases such that vacation of the dispositional order is warranted.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 2, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: November 22, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker