# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* C.W. and B.W.

No. 17-0614 (Barbour County 16-JA-6 and 16-JA-7)

**FILED**

**February 23, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother K.W., by counsel Jason T. Gain, appeals the Circuit Court of Barbour County's June 13, 2017, order terminating her parental rights to B.W. and her custodial rights to C.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Mary S. Nelson, filed a response on behalf of the children in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that she received ineffective assistance of counsel and that the circuit court's failure to timely enter its dispositional order unfairly prejudiced her.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2016, petitioner and the father were involved in a domestic altercation. Petitioner later indicated that she could not recall the details of the event, but it resulted in petitioner receiving a gunshot wound to her face. The father committed suicide by shooting himself in the head. This incident took place in the children's presence. Thereafter, the DHHR filed an abuse and neglect petition against petitioner. In addition to allegations regarding the domestic incident, the petition also alleged that petitioner tested positive for amphetamines, benzodiazepines, buprenorphine, opiates, and oxycodone upon her admission to the hospital following the incident. According to the DHHR, petitioner's substance abuse resulted in her

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, the Court notes that petitioner is not the biological mother of C.W. Although she was married to C.W.'s father, petitioner did not adopt the child. Moreover, C.W.'s biological mother's parental rights to the child were terminated in an earlier abuse and neglect proceeding. Accordingly, as the sole custodian of C.W., the circuit court ultimately terminated petitioner's custodial rights to the child.

1

inability to properly care for the children and caused the children's emotional abuse and neglect. The DHHR also alleged that the home was unsanitary and in disarray and that the children lacked a place to sleep. Finally, the petition alleged a history of domestic violence in the home and past abuse and neglect proceedings based on petitioner's substance abuse. Specifically, the petition alleged that an abuse and neglect proceeding in 2011 was based, in part, upon allegations that then-three-year-old B.W. was found wandering outside alone while petitioner was unconscious due to her intoxication from bath salts. Petitioner later waived her preliminary hearing.

In March of 2016, the circuit court held an adjudicatory hearing. Petitioner moved for a post-adjudicatory improvement period and also submitted a stipulated answer wherein, among other admissions, she confirmed that the children were in the home at the time of the domestic incident upon which the petition was based. Petitioner also admitted that she was under the influence of drugs at the time of the incident and that she subsequently tested positive for amphetamines, benzodiazepines, buprenorphine, opiates, and oxycodone.[2] The circuit court ultimately granted petitioner an improvement period based, in part, upon its finding that she deserved an opportunity to demonstrate her ability to improve free from the toxic relationship she had with the father. As part of her improvement period, petitioner was required to undergo various evaluations, substance abuse treatment, counseling, adult life skills training, continued medical treatment, and medical assistance to wean her from opiate addiction.[3]

---

[2] On appeal, petitioner raises issues concerning her positive drug tests upon admission to the hospital and the DHHR's allegations of drug use in its petition. First, petitioner argues that, although the DHHR's petition asserted that she was under the influence of drugs, this allegation was unconfirmed because the "petition notes than toxicology reports had not been performed[.]" While it is true that the petition indicated that, at the time of filing, the DHHR was "awaiting toxicology reports[,]" the petition goes on to state that "[t]oxicology reports taken during [petitioner's] admittance at Ruby Memorial Hospital . . . report that [she] was positive for amphetamines, benzodiazepines, buprenorphine, opiates, and oxycodone." As such, petitioner's allegations about the unconfirmed nature of her drug screens is unfounded. Second, petitioner asserts that she had a valid prescription for each of the drugs for which she screened positive. However, petitioner's citation to the record in support of this assertion illustrates only that petitioner alleged that one of her prescribed medications caused a false positive for amphetamines. According to the record, the parties were "waiting for confirmation from the lab" on that issue. Despite this assertion, petitioner does not include any additional citation that confirmed her positive drug screen for amphetamines was caused by any valid prescription. It is also unclear whether, at this point in the transcript, the parties are discussing the results of the toxicology reports from petitioner's admission to the hospital or the results of failed drug screens taken after the proceedings began. Accordingly, we find no support for the assertion that any or all of petitioner's various positive drug screens related to this proceeding were the result of false positive responses caused by valid prescription medication.

[3] Although petitioner states that the terms of this improvement period were never properly memorialized in a family case plan, she does not allege this as error on appeal and further admits that the guardian ad litem memorialized the terms in a report to the circuit court following a multidisciplinary team meeting.

Petitioner initially complied with the terms and conditions of her improvement period, but the DHHR later obtained evidence that she was involved in an inappropriate relationship with an incarcerated individual whom she intended to marry. Recorded phone calls and letters between them indicated that petitioner discussed her ongoing substance abuse with her boyfriend, including an admission on one occasion to having taken several Xanax. He also provided her with instructions as to how to smuggle drugs to him inside his facility and directed her with regard to money she received from unknown sources. Records also established that petitioner deposited approximately $1,500 into inmate accounts for her boyfriend and other inmates. Moreover, petitioner's physician provided a list of medications necessary to treat her history of substance abuse and her gunshot injury. Despite the fact that opiates were not on this list, petitioner continued to test positive for them. Petitioner also repeatedly failed to provide valid prescriptions that would explain these results. Additionally, petitioner tested positive for methamphetamine and Suboxone. Moreover, petitioner's visits with the children were often interrupted so she could take phone calls and make frequent trips outside. She was also late for multiple visits, failed to bring snacks for the children, and fell asleep during one visit, which prompted B.W. to cry and try to wake her. Petitioner also began missing parenting education classes and was recorded telling her boyfriend that she did not need counseling.

Based upon petitioner's failure to fully participate, the guardian filed a motion to terminate her improvement period in July of 2016. The following month, the circuit court held a hearing on the motion during which the parties informed the circuit court about the recorded phone calls and letters between petitioner and her boyfriend. The circuit court also considered evidence of petitioner's drug screen results and records from service providers and visitations. Petitioner's counsel proffered that petitioner ended her relationship with her boyfriend and that the money she provided him was from selling a car. Based on this evidence, the circuit court terminated petitioner's improvement period.

In November of 2016, the circuit court held a dispositional hearing, during which petitioner argued that she continued to comply with services and improve even after the termination of her improvement period. She also moved for a post-dispositional improvement period. The circuit court, however, terminated petitioner's parental rights to B.W. and her custodial rights to C.W. upon her continued drug abuse, failure to fully comply with services, and inability to correct the conditions that necessitated the petition's filing.[4] It is from the dispositional order that petitioner appeals.[5]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the

---

[4]According to the record, all parents to the children have either had their parental rights terminated or are deceased.

[5]On appeal, petitioner does not raise an assignment of error challenging the circuit court's termination of her parental rights.

3

facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T*., 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

We find that petitioner is not entitled to relief upon her claim of ineffective assistance of counsel.[6] It is important to note that this Court has never recognized a claim of ineffective assistance of counsel in an abuse and neglect proceeding, and we decline to do so here, especially in light of the fact that, under the limited circumstances of this case, petitioner's counsel provided her with effective representation below. In support of this assignment of error, petitioner cites several instances of alleged ineffective assistance by counsel. According to petitioner, counsel (1) failed to properly advise her of the availability of a battered spouse defense; (2) improperly advised her to stipulate to matters that were not her fault; (3) failed to object to the DHHR's failure to file a family case plan; (4) permitted petitioner to participate in an improvement period that did not provide treatment for her battered spouse syndrome; (5) failed to advocate for petitioner when, as a result of inadequate treatment, she abused prescription medication; (6) failed to advocate for an additional improvement period; and (7) presented no evidence to mitigate against termination of parental rights at disposition. The Court, however, finds no merit to these arguments.

First, counsel's alleged failure to explore a battered spouse defense is irrelevant, given the overwhelming evidence of petitioner's abuse and neglect of the children at issue. West Virginia Code § 49-1-201 defines a "battered parent" as

a respondent parent . . . who has been adjudicated by the court to have not condoned the abuse or neglect and has not been able to stop the abuse or neglect of the child or children due to being the victim of domestic violence . . . which was perpetrated by the same person or persons determined to have abused or neglected the child or children.

---

[6]Two of petitioner's assignments of error on appeal concern requests for this Court to determine the justiciability of ineffective assistance of counsel claims in abuse and neglect proceedings and to establish a collateral proceeding to assert the same. However, because we find that petitioner is entitled to no relief in regard to her claim of ineffective assistance of counsel, it is unnecessary to address these additional grounds for relief.

4

Petitioner simply does not meet this definition. While it is true that she was the victim of domestic violence, the record shows that petitioner also engaged in domestic violence against the father. Moreover, the facts of this case do not establish that petitioner was unable to stop the father's abuse or neglect because of the domestic violence at issue. On the contrary, the record shows ample evidence of petitioner's own abuse and neglect of the children, including her substance abuse, the fact that guns she owned were accessible to the children, and the home's general deplorable condition, among other evidence. Thus, the circuit court was presented with ample evidence of petitioner's own abuse and neglect of the children such that any possible defense predicated on petitioner's status as a battered spouse would not have been successful. Accordingly, all of petitioner's other allegations of ineffective assistance of counsel that are predicated on such a defense are similarly without merit.

Further, petitioner's allegation that counsel permitted her to stipulate to issues for which she was not responsible is also without merit, given the overwhelming evidence of her abuse and neglect of the children. Finally, we find no merit to petitioner's remaining allegations of ineffective assistance of counsel regarding various alleged deficiencies concerning the family case plan, the terms of her improvement period, and counsel's alleged failures to properly advocate on her behalf. Simply put, petitioner was aware of the terms and conditions of her improvement period and that she needed to comply with services in order to correct the conditions of abuse and neglect in the home. Despite this, petitioner continued to abuse drugs, was non-compliant with drug screens, and became romantically involved with an incarcerated felon with whom she "planned illegal drug transactions[.]" Based on this evidence, the circuit court found that petitioner failed to comply with the case plan and failed to change any behaviors that led to the petition's filing. Accordingly, petitioner is not entitled to any relief in regard to alleged ineffective assistance of counsel because of her own failure to attempt to correct the conditions of abuse and neglect.

Finally, we find that petitioner is entitled to no relief upon her assignment of error concerning the circuit court's untimely entry of its dispositional order. Petitioner argues that the circuit court waited approximately seven months after the dispositional hearing to enter the resulting order. This is in direct contradiction to Rule 36(a) of the Rules of Procedure for Child Abuse and Neglect Proceedings, which requires that the resulting dispositional order be entered "within ten (10) days of the conclusion of the hearing." According to petitioner, this diminished her likelihood of success on appeal. We do not agree.

Simply put, petitioner was in no way prejudiced by the circuit court's late entry of the order in question. She has established no error upon which this Court would grant relief or otherwise order the children be returned to her care. Thus, petitioner cannot establish that the children's extended placement in foster care has in any way affected a possible return to her custody. We have previously held that

> "[w]here it appears from the record that the process established by the Rules of
> Procedure for Child Abuse and Neglect Proceedings and related statutes for the
> disposition of cases involving children [alleged] to be abused or neglected has
> been substantially disregarded or frustrated, the resulting order . . . will be vacated
> and the case remanded for compliance with that process and entry of an

appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W.Va. 390, 686 S.E.2d 41 (2009). We find, upon the limited circumstances of this particular case, that the circuit court's failure to timely enter the order in question does not constitute such a disregard or frustration of the applicable rules and statutes that vacation of the dispositional order is warranted. As such, petitioner is entitled to no relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 13, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  February 23, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker