## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **K.B. and J.H.**

**No. 18-0255** (Webster County 17-JA-15 and 17-JA-16)

**FILED**

**November 21, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father T.B., by counsel Andrew B. Chattin, appeals the Circuit Court of Webster County's February 20, 2018, order terminating his parental rights to K.B. and J.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Mary Elizabeth Snead, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that he did not substantially correct the issues of abuse and neglect and subsequently terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds that the circuit court erred in terminating petitioner's parental rights upon a finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure, and a memorandum decision is appropriate to vacate and remand the matter.

In January of 2017, petitioner admitted to the DHHR that he used marijuana while the children, K.B. and A.H., ages four and seven, were in the home. The DHHR initiated a safety plan, which included a prohibition of certain individuals subject to past abuse and neglect petitions in petitioner's home. In February of 2017, the DHHR filed a petition alleging that petitioner violated the safety plan by allowing those certain individuals around the children. The DHHR further alleged that piles of dirty dishes and laundry were observed inside the home and that the conditions were worse than when the safety plan began. According to the DHHR, petitioner admitted that he was an alcoholic, and that a prohibited individual was staying in the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

home and helping him care for the children. Additionally, the DHHR alleged that another individual in the home admitted to using controlled substances and had a small amount of white powdery substance, a straw, and a pipe in his possession. The DHHR also alleged that petitioner previously successfully completed an improvement period in an earlier abuse and neglect proceeding.

Petitioner admitted to the allegations of abuse and neglect in the petition in March of 2017. Based on his admissions, the circuit court adjudicated petitioner as an abusing parent. The circuit court granted petitioner supervised visitation subject to clean and consistent drug screening. The circuit court granted petitioner a post-adjudicatory improvement period. In its order, the circuit court listed the following terms of the improvement period: "[that petitioner] remain drug and alcohol free, that he complete the program at Mid Ohio Valley, and that [he] not be in the company of anyone using drugs or alcohol, except that he may be in the presence of users or addicts also seeking treatment at the Mid Ohio Valley Fellowship Home." Additionally, the circuit court required petitioner to participate in all services and obey all previous orders. Further, the circuit court required that petitioner be drug screened before every visitation and have no contact with the individuals previously named in his safety plan. Finally, the circuit court required petitioner to "seek employment while in his rehabilitation program and gain and maintain employment during his improvement period." Although these terms were provided by the circuit court, the DHHR never filed a case plan memorializing the goals for petitioner's improvement. Petitioner was granted a three-month extension of his post-adjudicatory improvement period in October of 2017.

In December of 2017, the DHHR filed a motion to revoke petitioner's improvement period and terminate his parental rights. In the motion, the DHHR cited to the above-quoted language as the terms of petitioner's improvement period. Additionally, the DHHR alleged that "[i]t was also a requirement of the Department and the Improvement Period that [petitioner] obtain suitable housing prior to the expiration of his improvement period." The DHHR alleged that during a multidisciplinary team meeting ("MDT") in November of 2017 petitioner was still living in housing connected to the rehabilitation program. The DHHR alleged that petitioner had not made any significant effort in seeking housing, and was "encouraged to find suitable housing." The DHHR did not mention a family case plan in its motion to terminate parental rights.[2]

On January 10, 2018, the circuit court held a dispositional hearing and the DHHR presented evidence regarding its motion to terminate petitioner's parental rights. Petitioner testified that he signed a lease for an apartment two days prior to the hearing and was moving into that apartment in about five days. Petitioner testified that he worked two jobs, one in a restaurant and another at a window factory. Further, petitioner testified that he did not use drugs or alcohol throughout the improvement period and completed the Mid Ohio Valley substance

---

[2]According to the circuit court's docketing sheet provided on appeal, it does not appear that a case plan was ever filed below.

abuse program. A DHHR case worker testified that she felt as though petitioner was unmotivated throughout the case.

Ultimately, the circuit court found that petitioner participated in a prior abuse and neglect proceeding and, therefore, was familiar with what is required in such a proceeding. Further, the circuit court found that "while [petitioner] has successfully addressed his drug abuse, he has failed in a timely fashion to address the issues of suitable housing and has not . . . provided support for his children." The circuit court concluded that petitioner failed to correct the conditions of abuse and neglect and that termination was necessary for the welfare of the children. Petitioner was granted supervised post-termination visitation once per week provided that he refrain from using drugs and alcohol. Thereafter, the circuit court ordered termination of petitioner's parental rights in its February 20, 2018, order.[3] Petitioner now appeals that order.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court clearly erred and abused its discretion in finding that he failed to timely correct the conditions which led to the filing of the petition because he substantially complied with the terms of his improvement period. We agree, given the DHHR's failure to file a formal case plan, as required, and its late addition of a requirement that petitioner obtain housing.

West Virginia Code § 49-4-604(a) provides that "[f]ollowing a determination pursuant to section six hundred two of this article wherein the court finds a child to be abused or neglected, the department shall file with the court a copy of the child's case plan." As set forth above, the

_____

[3]J.H.'s mother's parental rights were terminated in July of 2012. K.B.'s mother was a non-abusing parent and retains her parental rights. According to the DHHR and the guardian, both children are placed with K.B.'s mother. K.B.'s permanency plan is to continue in his mother's custody. J.H.'s permanency plan is adoption in K.B.'s mother's home.

DHHR's motion to terminate petitioner's parental rights relied on the circuit court's April 19, 2017, order to set forth the terms of the improvement period, due to the lack of a formal case plan. As this Court has held, "[t]he purpose of the family case plan as set out in [W.Va. Code 49-4-604], is to clearly set forth an organized, realistic method of identifying family problems and the logical steps to be used in resolving or lessening these problems." Syl. Pt. 2, *In re Desarae M.*, 214 W.Va. 657, 591 S.E.2d 215 (2003). Additionally,

> [a] formal family case plan . . . is not only for the benefit and information of the parent seeking improvement; it is equally beneficial and necessary for the caseworkers and other assistive personnel. Without a family case plan, the individuals seeking to assist a parent are limited in their ability to formulate distinct goals, methods of achieving such goals, or means by which success will be judged.

*Id*, at 662-63, 591 S.E.2d at 220-21. Further, "without such a [case] plan, a court is then confronted with general testimony as to whether the natural parent has shown the requisite 'improvement.'" *State ex rel. Dep't of Human Serv. v. Cheryl M.*, 177 W.Va. 688, 694, 356 S.E.2d 181, 187 (1987). It is clear that petitioner was prejudiced by the lack of a family case plan which should have clearly set forth the terms of his improvement period. By the final dispositional hearing, the evidence showed that petitioner remained free of drugs and alcohol, completed a substance abuse treatment program, and obtained employment. The circuit court, however, found that petitioner failed to obtain suitable housing in a timely manner and was, therefore, unsuccessful in correcting the conditions of abuse and neglect. We find this finding is clearly erroneous given that petitioner successfully completed the terms as provided by the circuit court in its April 21, 2017 order. The requirement for suitable housing is first mentioned in the DHHR's motion to terminate petitioner's parental rights in December of 2017 approximately four weeks prior to the final dispositional hearing. Rather than provide petitioner a clear set of goals that included the requirement for suitable housing in April of 2017, the DHHR's later addition of this term limited petitioner's opportunity to respond and improve.

> "Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W.Va. 390, 686 S.E.2d 41 (2009). Accordingly, we find that the circuit court's failure to require the DHHR to file a family case plan constitutes a substantial disregard of the Rules of Procedure for Child Abuse and Neglect Proceedings such that vacation is warranted. Despite the late notice to petitioner that he needed to obtain housing independent from his treatment program, the record shows petitioner signed a lease for a two bedroom home that he was scheduled to move into five days after disposition. Therefore, this Court orders the circuit court to hold a dispositional hearing, take additional evidence regarding petitioner's housing situation, and determine the most appropriate disposition under West Virginia Code § 49-4-604 considering petitioner's current circumstances.

For the foregoing reasons, we vacate and remand the circuit court's order terminating petitioner's parental rights to K.B. and J.H. for further proceedings consistent with the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings and Chapter 49 of the West Virginia Code.[4] The circuit court is hereby ordered to hold the appropriate hearings and issue a final order in this case within sixty days. The Clerk is hereby directed to issue the mandate contemporaneously herewith.

Vacated and remanded.

**ISSUED**:  November 21, 2018

**CONCURRED IN BY**:

Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment

**DISSENTING:**

Chief Justice Margaret L. Workman

---

[4]Based on respondents' representations and the record on appeal, the Court finds that K.B. and J.H.'s current placement is appropriate and in their best interest at this time. Accordingly, we instruct the circuit court to maintain this placement until such time as the circuit court is tasked with determining an appropriate permanent placement for the children pursuant to West Virginia Code § 49-4-604(b) and the applicable Rules of Procedure for Child Abuse and Neglect Proceedings.