**FILED**

**January 12, 2022**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **T.W., H.W., and O.W.**

**No. 21-0574** (Jefferson County 21-JA-4, 21-JA-5, and 21-JA-6)

**MEMORANDUM DECISION**

Petitioner Father C.W., by counsel Jeffrey W. Molenda, appeals the Circuit Court of Jefferson County's June 25, 2021, order terminating his parental rights to T.W., H.W., and O.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Lee A. Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Jeffrey K. Matherly, filed a response on behalf of the children also in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in proceeding to disposition without the written report of the guardian, failing to enter the adjudicatory order within ten days of the adjudicatory hearing, and issuing orders that lacked sufficient findings of fact to permit meaningful appellate review. Petitioner also alleges that the errors committed by the circuit court frustrated the purpose of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings and Chapter 49 of the West Virginia Code.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]On appeal, petitioner does not directly assign as error the termination of his parental rights.

1

In February of 2021, the DHHR filed a child abuse and neglect petition against petitioner and his girlfriend, N.G.[3] The DHHR alleged that petitioner took seven-year-old T.W. to the emergency room due to leg swelling. Petitioner informed the medical staff that since T.W.'s mother died a year and a half prior, the child had ceased eating, would not get out of bed, did not want to walk, and had "completely shut down." According to the DHHR, the child was too weak to walk, was extremely malnourished and weighed only forty pounds, and appeared emaciated, with the bones in her neck, ribs, coccyx, and legs highly visible. The child also had several open wounds on her coccyx, buttocks, and hip and had reddened, blistering areas on her arms, legs, and kneecaps. The child's toes on her left foot were purple in color, and she had a wound on her left ankle. Petitioner reported that he put Neosporin and Band-Aids on some of the wounds but that they were not healing. Petitioner further reported that T.W. had a seizure three days earlier but that she stopped when he and N.G. placed her in the bathtub. Petitioner admitted that he did not seek any medical care for the child following the seizure. In fact, the DHHR alleged that petitioner had not obtained any medical care for T.W. since she was four years old.

The petition indicated that, due to the child's severe condition, she was transferred to Children's National Hospital in Washington, D.C. The reports from that hospital indicated that T.W.'s physical exam and radiologic findings were concerning for pressure induced soft tissue injuries including ulcers, limited mobility, and failure to thrive. The report also indicated that T.W. did not have normal function of her feet, which could have been due to an inflicted soft tissue injury, sequelae of frostbite, and/or malnutrition. Further, the report indicated that, although the child was unwilling to disclose being struck with an instrument of some sort, the presence of non-transient loop marks on her body was consistent with physical abuse.

In the ensuing investigation, a Child Protective Services ("CPS") worker spoke to petitioner, who reported that T.W. wanted attention all the time and did not listen. Petitioner reported that the child had always been small in stature and had problems with eating, urinating, and defecating, but he admitted that he had not sought medical treatment for her and did not have a regular pediatrician for the child. The CPS worker also spoke to N.G., who reported that T.W. would frequently use the bathroom in her bed and sit in it. N.G. stated that T.W. had been to the doctor and claimed there was paperwork to prove it. N.G. alleged that she had begun to notice T.W.'s weight loss approximately one week prior. Petitioner and N.G. also claimed T.W. acted out sexually. The child H.W. reported to the CPS worker that petitioner and N.G. forced T.W. to sleep on a dog bed because she frequently used the bathroom in her bed.

The DHHR concluded that petitioner and N.G. physically abused T.W. and offered explanations for the child's injuries that were inconsistent with the opinions of the child's treating physicians. Based on the physical abuse of T.W., the DHHR alleged that the other children were also abused and neglected.

The circuit court held a preliminary hearing later in February of 2021. Petitioner waived his preliminary hearing and admitted to taking nonprescribed Suboxone. N.G. testified that she regularly cared for T.W., H.W., and O.W., while petitioner worked. N.G. testified that T.W. did

---

[3]Petitioner is the father of the children. N.G. is the mother of only O.W. and L.S., a child not at issue on appeal. The mother of T.W. and H.W. is deceased.

not go to school regularly because "[i]t's been very hard to get [T.W.] to do anything." N.G. claimed T.W. wanted constant attention and would act out when she did not get attention. N.G. also claimed that T.W. had issues with eating and would hide her food or feed it to the dogs. N.G. stated that T.W.'s bathroom issues began in December of 2020, when the child began urinating and defecating on herself. N.G. claimed that she would ask T.W. if T.W. needed to go to the bathroom and that the child would respond that she did not but then urinate on herself in front of petitioner. N.G. also claimed that the child would ask, "[c]an you change me like you change the baby's diaper?" When asked whether she obtained medical treatment for the child, N.G. blamed a lack of insurance and claimed that the child simply wanted attention. N.G. testified that she did not notice any significant weight loss in the child until six days before the child was admitted to the hospital. N.G. opined that the sores on the child's knees must have happened when the child was playing on the floor and that the bruises on her legs were caused by the child frequently falling down. N.G. also denied that the child had a seizure. Rather, she claimed the child's eyes were open and that she was blinking but simply not responding to them; she claimed that she and petitioner "thought maybe that might have been her just acting out." Following N.G.'s testimony, she was ordered to submit to a drug screen and tested positive for nonprescribed Suboxone.

A CPS worker testified regarding her investigation into the referral. The CPS worker stated that she visited the child in the hospital and observed that the child was abnormally skinny, had bed sores, and had a swollen foot. The CPS worker testified that the child spent a week in hospital in Washington, D.C. Following testimony, the circuit court ratified the children's removal from the parents' care.

The circuit court held an initial adjudicatory hearing in March of 2021. The DHHR presented the testimony of several witnesses, including the testimony of T.W.'s therapist, who testified that the child suffered from anxiety and worry but was making progress and had not wet the bed in over a week. T.W. also reported to the therapist that she was not consistently provided food while in petitioner's care and that she was not permitted to access the refrigerator on her own.

Petitioner's sister, the children's paternal aunt, testified that she cared for the children on occasion, including four days in the summer of 2020 and two weeks in September of 2020. The aunt testified that T.W. was eating regularly at the time and did not have any injuries. The aunt testified that, when shown a picture of T.W. in the hospital, she "broke down" because "that wasn't the little girl that I had seen before." The aunt stated that the child did not appear thin when she previously cared for her. The aunt also stated that she took placement of H.W. and O.W. after they were removed from petitioner's care and that H.W.'s hygiene was poor at that time. Following the aunt's testimony, the circuit court continued the hearing.

In May of 2021, the circuit court reconvened the adjudicatory hearing. T.W.'s therapist testified that T.W. had made additional disclosures since the last hearing. The child disclosed physical abuse by petitioner and N.G., including that she had been smacked with a board and was forced to sit on her knees for long periods at a time. T.W. also reported that petitioner forced her to stand in a bucket of ice water without socks or shoes on. The child informed the therapist that both punishments were painful and that she was glad she was not with petitioner or N.G. any longer.

A CPS worker testified and submitted medical records for T.W. from October of 2019. Those records indicated that the child weighed fifty-one pounds at that time, meaning she had lost approximately eleven pounds as of the petition's filing in February of 2021. However, approximately two months after the DHHR took custody of the child, she weighed fifty-seven pounds, indicating a healthy weight gain following her removal from petitioner's care.

Petitioner presented the expert testimony of Dr. Sara Boyd, who opined that the child needed a comprehensive psychological evaluation. Dr. Boyd testified that there were possibly other explanations for the child's weight loss while in petitioner's care other than malnutrition or withholding of food. Dr. Boyd explained that the child was exposed to trauma prior to entering petitioner's home because she had witnessed the death of her mother and that that trauma could have influenced the child's behavior. Dr. Boyd did not reach a conclusion as to whether the child had been abused or neglected but simply made recommendations as to what sort of evaluation the child should receive.

The DHHR submitted the children's forensic interviews and pictures of T.W. to the circuit court. The circuit court also took judicial notice of the testimony presented at the preliminary hearing. Ultimately, the circuit court adjudicated petitioner as an abusing parent. The circuit court found that petitioner failed to "accept any responsibility for anything related to this child" and blamed the child for her behaviors. The circuit court found that the situation had lasted months and that the child was malnourished, suffered from atrophy, and developed bed sores. The circuit court noted that the child lost a significant amount of weight during a time when she should have been steadily gaining weight. In sum, the circuit court concluded that the parents withheld food from T.W. and neglected the child's health issues to such an extent that it constituted chronic abuse, which resulted in serious bodily injury to the child. The circuit court further found that the matter constituted aggravated circumstances.

The circuit court held a dispositional hearing in June of 2021, and petitioner requested an improvement period. Petitioner testified that he realized that he should have taken T.W. to get medical treatment much earlier than he did and should have requested counseling for the child. When asked what he would do in the future to fix the situation, petitioner testified that he would give the children four meals a day and take them to the doctor more frequently. Petitioner also testified that he would comply with parenting and adult life skills classes. However, on cross-examination, petitioner denied that he or N.G. starved T.W. and further denied that the child was ever forced to stand in a bucket of ice water. Petitioner set forth his belief that T.W. was seeking attention and was faking her behaviors, to a certain extent. Petitioner concluded that he had done nothing wrong. Based on petitioner's testimony, the circuit court found that petitioner clearly failed to acknowledge the conditions of abuse and neglect and, based on that lack of acknowledgement, found that petitioner was not likely to make any changes. It, therefore, denied him an improvement period.

The circuit court then proceeded to disposition, and the DHHR presented testimony in support of the termination of petitioner's parental rights. A CPS worker testified that T.W. was chronically abused and that the parents failed to acknowledge their role in that abuse. The CPS worker testified that the parents held the incredible belief that T.W. engaged in self-injury to such an extent that her muscles atrophied and she developed bed sores. However, from the time the

4

child was placed in foster care, the child immediately began to eat, gained seventeen pounds, and failed to demonstrate any of the behaviors claimed by the parents.

Following this testimony, the circuit court reiterated its findings of chronic abuse and aggravated circumstances. The circuit court found that the abuse happened over a lengthy period of time and that the parents totally abrogated their duties as parents to feed, clothe, and care for the child. The circuit court further found that, contrary to the parents' claims, there was no credible evidence presented that the child had an eating disorder or exhibited self-injurious behavior. Ultimately, the circuit court terminated the parents' parental rights upon finding that there was no reasonable likelihood that they could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. Petitioner appeals the June 25, 2021, dispositional order terminating her parental rights.[4]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that it was error to proceed to disposition without requiring the guardian to file a report at least five days prior to the hearing. According to Rule 18a(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings,

> [a] guardian ad litem should adhere to the Guidelines for Children's Guardians Ad Litem in Child Abuse and Neglect Proceedings set forth in Appendix A of these Rules and submit a written report to the court and provide a copy to all parties at least five (5) days prior to the disposition hearing that complies with the requirements set forth in Section D(8) of the Guidelines and Appendix B of these Rules.

Petitioner accurately states that this rule indicates that a guardian should file such a report within the applicable timeframes, but he cites to no authority that would require the vacation of a

---

[4]N.G.'s parental rights were also terminated below. The permanency plan for the children is adoption.

dispositional order in the absence of such a report. Instead, petitioner cites to the "West Virginia Judicial Benchbook" for the proposition that judges must have the guardian's report prior to making any decisions with regard to disposition. According to petitioner, the primary purpose of the guardian's report, which acts as a comprehensive summary of the case, is to inform the circuit court of the guardian's investigation and activities with the children. Petitioner avers that the guardian's report is also critical to this Court upon appellate review because "it is the only document with a longitudinal view of what occurred in the case." However, petitioner provides no explicit example of how this matter could have possibly been impacted by the provision of a report. Petitioner simply claims that the report could have (1) been persuasive in helping him "see [his] predicament, and (2) assisted the court in making decisions about the next steps in the case." Petitioner concludes that the absence of the report "unfairly deprived [him] of that information, and the opportunities afforded by it."

We find petitioner's arguments to be without merit. The record is clear that petitioner's counsel did not complain about the guardian's failure to file a report until after the circuit court terminated petitioner's parental rights in a last-ditch effort to prolong the proceedings. Moreover, in response to petitioner's objection regarding the guardian's lack of a report, the circuit court noted that the case was one of aggravated circumstances, that the DHHR was not required to make reasonable efforts to preserve the family, and that "everybody pretty much has known from the get go based on how this case has gone what [the guardian's] position was as far as the termination of parental rights based upon the lack of any admission of wrongdoing on behalf of either of these two parents." We have previously held that

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W. Va. 390, 686 S.E.2d 41 (2009). Because petitioner cannot establish how his defense to the DHHR's seeking termination of his parental rights at disposition was in any way hampered by the lack of a report from the guardian, coupled with his complete lack of acknowledgement of the issues of abuse and neglect, we find that he is entitled to no relief in regard to this assignment of error. Vacation of the order on appeal is thus unwarranted.[5]

---

[5]Although we find that petitioner is not entitled to relief on appeal in regard to his allegations concerning the guardian ad litem, we nonetheless remind this and all guardians ad litem to fully comply with the requirements this Court has established for guardians ad litem in these cases. In addressing guardians' responsibilities in abuse and neglect proceedings, the Court has explicitly held that

> Rule XIII of the *West Virginia Rules for Trial Courts of Record* provides that a guardian *ad litem* shall make a full and independent investigation of the facts

(continued . . .)

6

Petitioner next argues that the circuit court erred in failing to issue the adjudicatory order within ten days of the adjudicatory hearing. Petitioner states that the adjudicatory order was not issued until after the conclusion of the dispositional order. According to petitioner, the circuit court's failure to timely issue the order deprived petitioner of crucial information he needed to make informed decisions throughout the rest of the case, such as whether to file an interlocutory appeal of the adjudicatory order, make admissions or acknowledge the circuit court's ruling in adjudication, and request an improvement period.

Rule 27 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provides, in part,

> [t]he court shall enter an order of adjudication, including findings of fact and conclusions of law, within ten (10) days of the conclusion of the hearing, and the parties and all other persons entitled to notice and the right to be heard shall be given notice of the entry of this order.

While petitioner is correct that the circuit court did not timely enter the adjudicatory order, petitioner fails to demonstrate that he was prejudiced by the delay. The circuit court clearly made findings of fact and adjudicated petitioner on the record at the adjudicatory hearing held in May of 2021, and petitioner was present at that time. As such, petitioner was not deprived of any knowledge of the circuit court's ruling. Moreover, petitioner was not prohibited from raising issues regarding his adjudication in this appeal, yet he nevertheless failed to do so. Lastly, petitioner was not prevented from requesting an improvement period. Indeed, petitioner requested an improvement period at the dispositional hearing and provided testimony in support of his motion. Based upon our review, it does not appear that the process for abuse and neglect proceedings was "substantially disregarded or frustrated" by the circuit court's delayed entry of the adjudicatory order. *Emily G.*, 224 W. Va. at 390, 686 S.E.2d at 42, Syl. Pt. 3. For these reasons, vacating the resulting order is not appropriate.

Petitioner also argues that the circuit court erred in issuing an adjudicatory order and a dispositional order that lacks sufficient findings of fact to permit meaningful review of those orders. Petitioner claims that the circuit court's findings, both on the record and in its orders, are

---

involved in the proceeding, and shall make his or her recommendations known to the court. Rules 1.1 and 1.3 of the *West Virginia Rules of Professional Conduct*, respectively, require an attorney to provide competent representation to a client, and to act with reasonable diligence and promptness in representing a client. The Guidelines for Guardians *Ad Litem* in Abuse and Neglect cases, which are adopted in this opinion and attached as Appendix A, are in harmony with the applicable provisions of the *West Virginia Code*, the *West Virginia Rules for Trial Courts of Record*, and the *West Virginia Rules of Professional Conduct*, and provide attorneys who serve as guardians ad litem with direction as to their duties in representing the best interests of the children for whom they are appointed.

Syl. Pt. 5, in part, *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993).

"bare bones" rulings and that neither contain specific findings. According to petitioner, this failure requires vacating and remanding both the adjudicatory order and the dispositional order.

Both Rules 27 and 36 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings permit the circuit court to "make findings of fact and conclusions of law, in writing or *on the record*." (Emphasis added.) While we acknowledge that the circuit court's orders are somewhat limited in their findings of fact and conclusions of law, the circuit court provided ample findings on the record, including that T.W. suffered chronic abuse including malnourishment, muscle atrophy, and developing bed sores. The circuit court noted that the child lost a significant amount of weight while in petitioner's care and that she consistently gained weight after being removed from his care. The circuit court further found that petitioner failed to seek medical care for the child; abrogated his duty to feed, clothe, and care for the child; and failed to "accept any responsibility" for his role in T.W.'s abuse. These findings are sufficient to support both the adjudication and the termination of petitioner's parental rights. To the extent petitioner complains that the circuit court did not make sufficient findings as to H.W. and O.W., we note that West Virginia Code § 49-1-201(1)(A) defines an "abused child" as a child whose health or welfare is harmed or threatened by "[a] parent, guardian, or custodian who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child *or another child in the home*." (Emphasis added.) Since the circuit court found that T.W. was an abused child because she was the victim of extensive physical injury caused by petitioner, this finding naturally extended to the other children in the home, as they were at risk of similar harm. Indeed, the adjudication order specifically found that all the children were abused children, and the dispositional order terminated petitioner's rights to all the children. Therefore, we find no error in the circuit court's findings of fact or conclusions of law as they are sufficiently detailed for appellate review.

Lastly, petitioner argues that the errors committed by the circuit court frustrated the purpose of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings and Chapter 49 of the West Virginia Code. However, as noted above, we find that none of the alleged errors raised by petitioner substantially disregarded or frustrated the rules or related statutes pertaining to this case. Therefore, vacating and remanding the adjudicatory or dispositional order is not warranted, and petitioner is entitled to no relief in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 25, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: January 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton